## HENDERSON *v.* TIPTON.

### (*Knoxville.* October 26, 1889.)

1. STATUTE OF LIMITATIONS. *Seven years. Act of 1715 protects heir.*

   The *heir*, who takes title to land by descent and claims and holds it for seven years after the ancestor's death, is protected, without having had any actual possession of the land, under the provisions of the Act of 1715, from suit thereafter instituted against him to enforce a written contract, breached by the ancestor before his death, whereby the latter took and agreed to hold the title of the land in trust for the party suing.

   Code construed: §§ 3119, 3483 (M. & V.) ; §§ 2281, 2786 (T. & S.).

   Cases cited and approved: Love *v.* Welch, MS., citing Smith *v.* Hickman, Cooke's Rep., 329; Lewis *v.* Hickman, 2 Tenn., 316; Peck *v.* Wheaton, M. & Y., 353; Williams *v.* Conrad, 11 Hum., 412; Earles *v.* Earles, 3 Head, 366.

2. SAME. *Recognition of claim by personal representative.*

   Recognition of such claim or trust by the personal representative, having only a naked power to sell the land, does not prevent the running of the statute of 1715 in favor of the heir. Nor does such recognition by the heir himself stop the running of that statute, unless it is equivalent to a valid assumption of the claim or trust on the part of the heir.

   Cases cited and approved: Loyd *v.* Loyd, 9 Bax., 406; Cooper *v.* Lyons, 6 Lea, 597.

---

FROM MONROE.

---

Appeal from Chancery Court of Monroe County. S. A. KEY, Ch.

P. B. MAYFIELD, T. E. H. McCROSKEY, and STEPHENS & HICKS for Complainants.

ROBERT PRITCHARD and NELSON & ROGERS for Respondents.

SNODGRASS, J. The bill in this cause was filed March 27, 1886, against M. M. Tipton, as executor and one of the devisees of the will of John B. Tipton, and against twenty-five or thirty other defendants, co-devisees, children, and heirs of children of John B. Tipton. These defendants were in different counties and different States, many of them minors and married women.

The object of the bill was to recover of them certain described lands, or proceeds arising from a sale thereof, made by Defendant M. M. Tipton as executor, and of which lands John B. Tipton died the legal owner, March 20, 1873, having been such for more than twenty years before his death. The theory and claim of the bill is, that while Tipton held the legal title, it was in trust for himself and complainants, or persons named, of whom complainants are heirs, and this they show by written agreement, executed before the lands were purchased by Tipton. The complainants also insist that Tipton, in his life-time, and his executor since his death, have recognized their interest. This is denied, and there is considerable evidence on the question *pro* and *con;* but in the view we take of it, this is not material. The defendants

plead and rely on the statute of limitations of seven years in favor of the heirs and representatives of a decedent as a complete defense, whether the testator, in his life-time, recognized the titles of complainants and those under whom they claim or not, and whether such recognition was or not made after his death by his executor.

They show he died March 29, 1873, and the executor qualified January 5, 1874, more than twelve years before the bringing of this suit. They show that the land was not devised to the executor, but descended to his heirs subject to power of sale given to the executor, the terms of the will on that point being: "After my decease, my will is that my executor may, at any time he may think best, advertise and sell all of the land I may die seized and possessed of not otherwise appropriated."

As before stated, they show these heirs to be numerous, scattered over different counties and States, and many of them under disability. It is not pretended that they did or could have recognized the claim of complainants, and the question is as to the effect of such alleged recognition by the executor. The land was wild land, and the executor has asserted the claim of the estate, and has paid taxes. Some proof is made respecting like claim on the part of some of the complainants, and that this was known to the executor, and their rights not disputed, if not admitted. But we hold, as stated, it is immaterial whether

17—4 P

he did or not recognize complainants' claim. It would not affect the rights of the heirs under the statute we are considering.

A request for delay and recognition of a personal demand by an executor does not stop the running of this statute. *Loyd* v. *Loyd*, 9 Bax., 406; *Cooper* v. *Lyons*, 6 Lea, 597.

Still less could the heirs be deprived of this defense by the conduct of an executor and his recognition of claim against the land. This statute, embodied in §§ 3119 and 3483 of the Code (M. & V.), is one of positive prescription, and not only bars the remedy but extinguishes the right; runs against everybody, including the State, and need not be pleaded, but may be relied on in evidence.

The only question here is whether the statute applies to a claim or demand like the present. In terms the statute refers to creditors, and appears to contemplate suits against the personal representatives. But in numerous cases a construction has been given to the statute showing its application to other demands than mere personal claims, and to other persons than representatives. It has been uniformly held to protect the heirs of a decedent or devisees of a testator. These cases are all referred to in notes to the sections cited, and need not be restated here.

Finally, the exact case now presented, on facts almost identical, came before the Court at Jackson in 1875, and it was there held, in an elaborate opinion by Judge McFarland, in which several of

the leading cases were reviewed, that the statute applied to a suit against heirs to recover real estate; that such a claimant was within the meaning of the term "creditor" there used, and such a claim was a "demand" within the meaning and purpose of the statute; that the object and purpose of the statute was to make all claims for money, personalty, or realty, on which the deceased could have been sued in his life-time suable for seven years after his death against anyone representing him in the title, and after that time be extinguished, whatever might be the nature or character of the demand which might have been asserted in his life-time.

We adhere to that ruling, and, as the opinion has not been published, without repeating the argument on the adjudication of the question, direct, in view of its importance, that it be published in the next volume of reports along with this.

The decree is reversed, and bill dismissed with cost.

---

The opinion in *Love* v. *Welch,* cited above, is as follows:

#### OPINION.

McFarland, J. On September 8, 1819, Robert and Thomas Love (brothers), residing in North Carolina, entered into a written article of agreement, which, in substance, shows that each party had previously made contracts with other persons for locating land warrants and surveying and identifying lands in West Tennessee; and by this contract it was agreed that said Robert and Thomas Love should have an equal benefit under these contracts, each to bear one-half of the expenses. And it was

further agreed that any contract that either might make thereafter for the purchase of western and military land warrants, or locating the same, should be on joint account.

The agreement further shows that Robert Love had a contract with John Grey Blount for the sale of certain lands in North Carolina, and that Thomas Love was to have a joint interest in all sales made after a certain date, he paying one-half of the expenses. Other parts of the agreement are not material to this case.

Under this contract the parties became the owners of a large amount of lands in West Tennessee, principally in consideration of services in locating and surveying lands for other parties, and probably by purchasing and locating warrants.

Thomas Love died in the year 1844, in Henry County, in this State, to which place he had removed some years previously. Robert Love died in North Carolina in the year 1845. About the year 1849 a bill was filed by the devisees of Thomas Love in the Chancery Court of Paris for a partition of the West Tennessee lands. To this bill the devisees of Robert Love were made parties, and the cause conducted to a final hearing, it resulting in a partition of all the lands except the portions involved in the present cause, which were not mentioned or referred to in that cause. A similar bill was also filed by the executors of the will of Thomas Love against the personal representative of Robert for a settlement of the partnership accounts as to the expenses, taxes, etc., growing out of these land speculations. This cause was prosecuted to a final decree.

Subsequently, on April 25, 1859, the present bill was filed. It charges that under this agreement of 1819 the complainants, the devisees of Robert Love, are entitled to recover from the devisees of Thomas Love one-half of four tracts of lands, one a tract of upwards of four hundred acres in Haywood County, the other tracts in Shelby County. The latter were acquired by Thomas Love by two deeds—one dated January 7, 1825, the other January 7, 1826; one from John Tyson, the other from Murdock McMillian; both conveying the lands directly to Thomas Love. The title to the land in Haywood County was also in the name of Thomas Love.

The fact may be taken as satisfactorily established that these lands, or part of them at least, were the joint lands of the two brothers under the aforesaid partnership agreement. The question, however, we are called upon to decide is whether or not the relief prayed for is barred by the Act of 1715, Ch. 48, Sec. 9, which is pleaded and relied upon.

The bill was filed more than seven years after the death of Thomas Love, and the cause of action was in existence at that time. The section referred to enacted that "the creditors of any person deceased shall make their claims within seven years after the death of such debtor, otherwise such creditors shall be forever barred."·

So far as any relief against the executors of the will of Thomas Love, who are made defendants, is concerned in the way of a decree for an account of the profits or proceeds of said partnership, we think it clear that the above statute is a complete defense. No such relief, however, is specially prayed for, though the executors as such are made defendants. The relief specially prayed for is against the heirs or devisees for a division of the land referred to. It is argued with great earnestness and force that the statute has no application in favor of the devisees or heirs of Thomas Love; that they took the lands in trust for Robert Love and his heirs and devisees to the extent of one-half, and, this trust being express, raised by express contract of the parties, is not affected by the statute in question. It therefore becomes necessary to review the decisions in this State upon the question.

In 1813 the case of *Smith* v. *Hickman's Heirs* was decided by the Supreme Court of Errors and Appeals. Cooke's Rep., 329. It was a bill in equity for the specific performance of an obligation entered into by the ancestor of the defendants to convey the complainants six hundred acres of land in a reasonable time. The defendants pleaded that the claim was not made within seven years after the death of the ancestor. This was the defense. The Court held that the complainants seeking this specific performance against the heirs was, in the sense of the above Act, a creditor; that the heir was protected as well as the personal representative; and that the plea was good. In argument the attempt has been made to show that this decision rests upon other grounds, but this was the very point in judgment, and by no fair construction can it be avoided.

This was followed by the case of *Lewis' Heirs* v. *Hickman's Heirs*, in 1814. 2 Tenn. (Overton), 316. This was also a bill in equity upon a bond of the ancestor for the conveyance of a tract of land. The administrator of the obligor had attempted to comply with the bond by making a deed, in pursuance of the Act of 1794, for a tract of land in a different county. The bill charged that this deed was void, and prayed to have the bond set up and the plaintiff relieved. The heirs by plea relied upon the above statute of seven years. The plea was held good, upon the authority of the case first referred to.

In *Peck* v. *Wheaton's Heirs*, M. & Y., 353, the Act was held to protect the heirs from a judgment against the administrator.

In *Williams* v. *Conrad*, 11 Hum., 411, slaves were conveyed upon a parol trust, to be held, first, until the grantee should be re-imbursed by their heirs the amount he was to pay on the debts of the grantor, then to convey the slaves to the daughter of the grantor for life, remainder to her children. The grantee died, disposing of part of the slaves by will. The bill of the daughter for relief was held barred by this statute because not filed within seven years from the death of the grantee. Her right was held a claim, within the meaning of this statute, against the deceased, which should have been made within seven years from his death. The

remainder-men were held not to be barred, because their right of action had not accrued.

*Earles* v. *Earles*, 3 Head, 366, holds that a resulting trust is barred by this statute.

These authorities seem to us to establish that a complainant, seeking to recover from the heirs or real representatives of a deceased person *an interest in land descended to them from their said ancestor*, upon a contract of the latter, is a creditor of the deceased in the sense of this Act, his demand a claim which he must make within seven years, otherwise his remedy is barred in favor of the heirs.

It is true these authorities give to the word " creditor," as contained in the Act, a somewhat liberal construction, yet they probably follow the spirit of the Act, which is, that all demands or claims for relief against the personal representative or heirs of a dead man, upon any contract of, or equity against him, must be made within seven years from his death. At any rate, we think that there is no mistaking the conclusion that such is the purport of these decisions.

In the present case the title to the lands was acquired by Thomas Love by deeds containing no trust upon their face; upon his death it passed to his devisees. It is claimed the latter hold the title to the extent of one-half, in trust for the complainants, by virtue of the contract of Thomas Love of 1819, and that this statute does not operate against an express trust. This contract was a personal obligation of the parties, not contracting for an equity in any particular lands, but an agreement for a partnership in general speculations, in which these lands were afterwards acquired, the parties binding themselves in a penalty of $10,000 for its performance.

In the cases before referred to, where the ancestor had sold and by bond bound himself to convey particular land to the vendee, the heirs were protected by this statute, although there are authorities holding that after a sale and bond to convey, the vendor holds the legal title in trust for the vendee, and that it so descends to the heirs. And in *Williams* v. *Conrad,* before referred to, Conrad held the title to the slaves upon a distinct, unequivocal trust, declared at the time for the benefit of the daughter of the vendee for life. This trust was by express agreement; it was to have been declared in writing, but by the fraud of Conrad this was not done; but the Court say that it was the same as if it had been in writing, in cases of fraud equity treating it as if the bond had been given; and yet the daughter was held barred by this statute from enforcing this express trust against the heirs of Conrad.

If we follow these authorities the conclusion seems irresistible that the bar of the statute is complete in the present case. The trust is certainly not more definitely fixed upon this land in the hands of the defendants than it was in the case before referred to, where the statute was held to apply. As we have said, the statute would certainly bar any

Henderson *v.* Tipton.

claim for an account of profits and expenses of the partnership. These accounts, it is true, were settled in a former case, except perhaps as to taxes and expenses, upon these particular lands, and as to the claim of Thomas Love's estate for a share of the profits in the Grey Blount speculation. It being a partnership, the entire business should have been settled in one case.

We are referred to the case of *Coulson* v. *Walton,* by the Supreme Court of the United States, 9 Peters, 62, upon this question. This case was decided in 1835. The cases in this State previously decided were reviewed, and it was held that they did not establish that this statute would protect heirs from a claim for land contracted to be sold by their ancestor, and that the statute did not apply. With great respect for the tribunal making this decision, we are forced to say that we understand the purport of the decisions in this State differently, and that we are not satisfied with the view taken in the opinion of the Court in that case of the effect of our cases before referred to. And, besides, the case of *Williams* v. *Conrad* was several years later, and the question is there directly met and decided.

We are referred, however, to the case of *Thomas T. Hunt and wife, Mary S. Hunt,* v. *R. B. Somerville,* decided by this Court at the April Term, 1873 (MS. opinion, by Judge Deaderick), where the facts as stated seem to raise this question. But it is very manifest that the question was not considered or passed upon by the Court. In the opinion .it is stated that the defendants relied upon the statute of limitations and the lapse of time as a defense.

In disposing of this question it is said: "To create a bar upon a plea of the statute of limitations there must be an adverse possession of the land in every case;" and the opinion proceeds to show that there was no adverse possession in that case. From this it is apparent that the statute of limitations considered in that case was the ordinary statute of 1819, by which suits to recover lands, or an interest therein, are barred by seven years' adverse possession. The statute we are considering is wholly different, *and does not depend upon adverse possession at all.* It is the lapse of seven years from the death of the debtor that creates the bar. We think, therefore, that it is manifest that if this statute was pleaded in the case last referred to, it was not considered by the Court. It cannot be supposed that this Court intended to overrule the cases on the question without even a reference to them.

In addition to the cases to which we have referred, where the question was decided, there are other cases in which it is incidentally referred to and these authorities recognized.

We think, therefore, the question has been too well and too long settled to authorize us to depart from the conclusion reached. We do not say that cases may not arise where the trust is established by the act, contract, or recognition of the heir himself, so that it might be enforced

against him notwithstanding this statute. It would then be simply a suit against the heir, not as heir, but to enforce rights against him as any other individual growing out of his own acts or contracts. We think, however, such is not this case.

There is proof of some admissions by one of the devisees, but not sufficient to make a case upon the principle suggested.

The Chancellor's decree dismissing the bill must be affirmed with costs.