## FITZSIMMONS *v.* JOHNSON.

## (*Jackson.* June 9, 1891.)

1. JUDGMENT. *Of Probate Court of another State.*

Judgment of Probate Court of another State confirming settlement of executors' accounts and discharging them, or declaring aggregate balance in their hands, and ordering in general terms its distribution according to the testator's will and the law of the case, is a judicial proceeding entitled to full faith and credit and conclusive upon all the parties when brought in question in any of the Courts of this State, if the Probate Court had jurisdiction of the subject-matter and the parties. (*Post, pp. 431–434, 436.*)

Constitution construed : Art. IV., Sec. 1, U. S. Constitution.

2. SAME. *Same. Jurisdiction of parties.*

Executors appeared before a Probate Court of the State of Ohio, having jurisdiction of their accounts, and made settlements upon proper notice to legatees, and obtained judgment confirming settlement and discharging them. The executors then, and-ever thereafter, resided in Tennessee. A legatee obtained reversal of this judgment in the Appellate Court upon writ of error. And after remand of the cause, the Probate Court corrected and restated the executors' accounts and adjudged a large balance in their hands, and directed its distribution. The executors did not appear in the Appellate Court, or in the Probate Court after remand of the cause. The only notice given of these latter proceedings was by publication, as authorized by statute, upon the application for writ of error.

*Held:* The judgment of the Appellate Court, though rendered upon notice by publication and without appearance, is valid and binding upon the executors even in the Courts of this State, and that the proceedings had in the Probate Court after remand of the cause, without further notice than the mandate of the Appellate Court, were likewise valid and binding. (*Post, pp. 419–430.*)

3. WRIT OF ERROR. *Notice of, by publication sufficient.*

Although personal judgment rendered in an original suit by a Court of original jurisdiction, upon notice by publication alone, without service

of process or appearance, and without attachment of property, is absolutely void, this principle does not apply to personal judgments rendered by Courts of appellate jurisdiction or pursuant to their mandates, where the cause has been removed into the Appellate Court by writ of error, obtained upon publication alone, made as required by law, and prosecuted to reverse the judgment of a Court that had jurisdiction of all the parties. Writ of error is not, in this respect, a new or original suit, but a mere continuation of a suit already properly begun. (*Post, pp. 423–430.*)

Cases cited and approved: 95 U. S., 714; 6 Wheat., 410; 12 Peters, 170; 24 How., 195; *Id.*, 205.

Cited and distinguished: Cain *v.* Cocke, 1 Lea, 290; Mowry *v.* Davenport, 6 Lea, 83; Woolridge *v.* Boyd, 13 Lea, 151; Ridgely *v.* Bennett, 13 Lea, 206; Spurgin *v.* Spurgin, 3 Head, 25.

4. SAME. *Statute of limitation. Disability.*

In Ohio writ of error is barred in two years with indefinite saving in favor of persons under disability. Married women likewise take all personal property to which they become entitled as separate estate, and can sue and be sued, with respect to it, as if unmarried. A married woman, legatee under a will, obtained reversal, by writ of error, of judgment of Probate Court discharging executors, and a declaration of a large balance in their hands. This writ of error was taken after a delay of twenty-two years, during which time she was continuously under the disability of coverture.

*Held:* The Tennessee Courts will follow the Ohio Courts in the construction of their statutes, and hold that married women are entitled to the saving of the writ-of-error statute, notwithstanding their emancipation under the married woman's Act. (*Post, pp. 436, 439, 440.*)

Case cited : 43 Ohio St., 386.

5. SAME. *Same. Same.*

And further, that the action of the Appellate Court of Ohio, in entertaining said writ of error, is conclusive upon the Courts of this State in any case raising that question. (*Post, p. 440.*)

6. SAME. *Same. Effect of saving in favor of disabilities.*

Prosecution of writ of error by party within saving of statute does not operate for the benefit of other parties, then barred, whose interests are distinct and independent. Hence, writ of error taken by one of several residuary legatees interested in a common fund does not operate for the benefit of all. (*Post, pp. 438, 439.*)

27- -6.p

Fitzsimmons *v.* Johnson.

7. STATUTE OF LIMITATION.  *Seven years protects estates.*

Statute of limitation of seven years for protection of estates of dece-
dents is an absolute and unconditional bar against all liabilities.  It
extinguishes the right of action and applies to all persons, including
those under disability.  (*Post, pp. 441, 442.*)

Code construed: §§ 3119, 3483, 3452 (M. & V.);  §§ 2281, 2786, 2758
(T. & S.).

Cases cited and approved:  Foster *v.* Maxey, 6 Yer., 225;  State *v.*
Crutcher, 2 Swan, 512;  Stone *v.* Sanders, 1 Head, 248;  Williams *v.*
Conrad, 11 Hum., 412;  Bomar *v.* Hagler, 7 Lea, 89;  Caldwell *v.*
McFarland, 11 Lea, 463;  Sigler *v.* Vaughn, 16 Lea, 346;  Henderson
*v.* Tipton, 88 Tenn., 258.

8. SAME.  *Same.*

And the six months in which suit cannot be brought against an estate
is not excluded in computing the time for the running of this statute.
(*Post, pp. 441, 442.*)

9. SAME.  *Married woman's suit for separate estate.*

Married woman's suit against executors for legacy, declared her sepa-
rate estate under the will and the law, is not barred, where she has
been under continuous disability of coverture, by the lapse of ten or
more years after her right of action accrued.  (*Post, pp. 442, 443.*)

Code construed: § 3473 (M. & V.);  § 2776 (T. & S.).

10. FOREIGN WILL.  *Disposing of personalty in this State.*

T., resident in Ohio, died, leaving by will certain personalty in this
State to F., a married woman, resident in Ohio.  The will was pro-
bated in Tennessee.  Under the Ohio statutes married women take
all personal property coming to them " by gift, bequest, or otherwise "
as their separate estate.

*Held:* F. took the bequest of personalty situate in Tennessee as her
separate estate.  (*Post, pp. 442, 443.*)

Cases cited and approved: Estes *v.* Kyle, Meigs, 34;  Peebles *v.* Green,
6 Lea, 473;  Barbour *v.* Erwin, 14 Lea, 716;  Robinson *v.* Queen, 87
Tenn., 445;  Gassaway *v.* Hopkins, 1 Head, 583;  Bank *v.* Walker,
14 Lea, 299;  Lewis *v.* Woodfolk, 2 Bax., 25.

11. CHANCERY PRACTICE.  *Concurrence of Master and Chancellor.*

Doctrine re-affirmed as to effect of concurrence of Master and Chancel-
lor as to matters of fact.  (*Post, p. 444.*)

Fitzsimmons v. Johnson.

Cases cited and approved: Turley v. Cooley, 3 Leg. R., 193; Brown v. Daily, 85 Tenn., 218; Turley v. Turley, 85 Tenn., 251.

FROM SHELBY.

Appeal from Chancery Court of Shelby County. B. M. ESTES, Ch.

MILLER & GILHAM for Fitzsimmons.

W. M. RANDOLPH for Johnson.

CALDWELL, J.    John W. Todd died, testate, at his residence in Clermont County, Ohio, in the early part of the year 1864. He nominated his friends, John Johnson and C. W. Goyer, of Memphis, Tennessee, as executors of his will. They accepted the trust, went to Ohio, and, on April 27, 1864, were duly qualified by the Probate Court of Clermont County as executors of the will.

On November 6, 1865, the executors made what purported to be a final settlement of the estate of their testator, showing that they had received assets to the amount of $63,495.25, and that, of this, they had paid to the widow of the testator, as sole distributee, $61,040.10, and that the other $2,455.15 had been used in the payment of debts and expenses of administration. This settlement

was made in the Probate Court of Clermont County, Ohio, on whose record the following entry was made: "This day the Court examined the accounts and vouchers of C. W. Goyer and John Johnson, executors of the estate of John W. Todd, deceased, and found the same to be in all things correct; that they have been regularly advertised for exceptions, and none having been filed thereto, the same are hereby approved and confirmed. And the Court finds that said executors have paid all just claims against said estate, and have distributed the remainder according to the will of the testator. And the said accounts are ordered to be recorded, and the executors are discharged."

The testator left no children or representatives of children. By the first ten clauses of his will he expressed certain desires, which need not be mentioned in this opinion, and made provision for his widow; and by the eleventh clause he devised and bequeathed the *residuum* of his estate, both real and personal, to his four sisters and one brother. The provision made for the widow proved unsatisfactory to her; hence, she failed to *accept* it. And her non-acceptance had the same legal effect under the Ohio law that an affirmative dissent has under our law. She had the same claims upon her husband's estate as she would have had if he had died intestate.

The executors assumed that she was entitled to the whole of his personal estate after the payment

of debts and expenses, and upon that assumption they paid her the $61,040.10.

Such *had been* the statute law of Ohio, but it was changed, so as to allow the widow only one-third of her husband's net personal estate, a few years before the final settlement.

On January 15, 1887, Mary A. Fitzsimmons, one of the residuary legatees, filed her petition in error, in the Court of Common Pleas of Clermont County, Ohio, for the purpose of having the judgment of the Probate Court reviewed and reversed. Goyer having died in the meantime, Johnson alone, as surviving executor, was made defendant to this petition. The petition was accompanied with an affidavit that Johnson was a non-resident of the State of Ohio, and could not, therefore, be personally served with summons, that he had no attorney of record in the State, and that it was a proper case for publication. Thereupon publication was made for Johnson, as a non-resident, requiring him to appear and plead to the petition; and a copy of a newspaper containing the published notice was sent to him at his residence in Memphis, Tennessee.

Johnson made default, and on January 20, 1888, the petition in error was heard in the Court of Common Pleas, and the judgment of the Probate Court was reversed and set aside, and the cause was remanded to the Probate Court for further proceedings. After the remand, Mrs. Fitzsimmons and Mrs. Young, another of the residuary legatees, appeared in the Probate Court and filed exceptions

to the accounts of Goyer and Johnson, which had been confirmed by that Court in 1865. These exceptions were set for hearing, and a copy thereof, together with a notice of the time and place of hearing the same by the Court, was mailed to Johnson at Memphis.

Johnson again failed to appear. The exceptions were sustained, and, on February 2, 1888, the Probate Court adjudged that the executors had been improperly credited in the former settlement with the $61,040.10 paid the widow, and that they had received $30,000 besides, which they had not reported or accounted for in any way. The Court further adjudged that these two sums, together with interest thereon, in all $130,640, remained, or should be, in the hands of the executors for distribution; and it was ordered that Johnson, as surviving executor, proceed to distribute said sum of. $130,640 according to the will of John W. Todd, deceased, and according to law.

That judgment is the principal ground of the present action. On March 28, 1888, Mrs. Fitzsimmons and the other four residuary legatees, by themselves and their representatives, filed this bill in the Chancery Court at Memphis, to recover from Johnson, as surviving executor, and from the estate of Goyer, the deceased executor, the said $130,640, and other sums alleged to have been received by the same persons as executors of John W. Todd's estate in Tennessee.

The Chancellor dismissed the bill on demurrer;

so far as relief was sought on the Ohio record, but retained it for other purposes, to be hereafter stated. After final decree on the merits of the other branch of the cause, both complainants and defendants appealed to this Court. All material questions raised in the Chancery Court are presented here by assignments of error.

Was that part of the bill seeking relief on the judgment of the Probate Court in Ohio properly dismissed?

The main ground of demurrer to that part of the bill was want of jurisdiction in that Court to pronounce the judgment.

The question of the Court's jurisdiction of the *subject-matter* need not be discussed or elaborated, for, by the statute of Ohio, her Probate Courts are given general jurisdiction to settle the accounts of executors and administrators, and to direct distribution of balance found in their hands. Jurisdiction of the *subject-matter* was, therefore, ample and complete. Rev. Stat. Ohio, Sec. 534.

Whether the Court had jurisdiction of the *person* of Johnson is not so easily answered.

It is conceded in the bill and recited on the face of the record that Goyer was dead, and that Johnson, the surviving executor, was not personally served with notice, either of the appellate proceedings in the Court of Common Pleas or of the subsequent proceedings in the Probate Court, which resulted in the judgment sued on; and that, being a non-resident, and without an attorney of

record in the State, only publication was made for him.

It is now well settled that a *personal* judgment against a non-resident, rendered in an *original* suit, upon constructive notice—that is, upon notice by publication merely—is an absolute nullity, and of no effect whatever. Though a State may adopt any rules of practice and legal procedure she may deem best as to her own citizens, she can adopt none that will give her Courts jurisdiction of non-residents so as to authorize *personal* judgments against them without personal service of process upon them.

By *personal judgments* we mean judgments *in personam*—as, for payment of money—in contradistinction from judgments *in rem*, whereby the property of non-residents, situated within the territorial limits of the State, may be impounded; for when non-residents own property in a particular State it is subject to the laws of that State, and may be attached or otherwise brought into *custodia legis* as security for the debts of the owners, and actually sold and applied by direction of the Court, without personal service and by constructive notice merely. *Pennoyer* v. *Neff*, 95 U. S., 714.

The judgment before us is confessedly a *personal* judgment. Hence, if the appellate proceedings in the Court of Common Pleas and the subsequent proceedings in the Probate Court were original proceedings, standing upon the same ground with respect to notice as an original action, that judg-

ment is void for want of jurisdiction of the person.

The demurrer assumed, and, in sustaining it, the Chancellor held, that the petition in error, by which the cause was removed from the Probate Court to the Court of Common Pleas, was, in effect, an original action, and that it could be prosecuted only on notice by personal service; and that, it appearing that no such notice was given, the judgment sued upon was null and void.

We do not concur in the view that the petition in error was a new suit, or, that to entitle petitioner to prosecute the same, she must have given the defendant therein the same notice required in the commencement of an original action. In saying this, we are not unmindful of the fact that many of the authorities speak of a writ of error, whose office seems to be the same in most of the States as the petition in error under the Ohio law, as a new suit. Such is the language of some of the earlier decisions in Ohio. 3 Ohio, 337. In some of the cases in our own State a writ of error has been called a new suit (1 Lea, 290; 13 Lea, 151); in others it is said to be in the nature of a new suit (6 Lea, 83; 13 Lea, 206); and in still another the Court says it is to be regarded as a new suit. 3 Head, 25. But in no case that we have been able to find, or to which our attention has been called, does the Court decide that a writ of error is a new suit in the sense of being the commencement of

an original action, or that it requires the same character and stringency of notice as an original action.

In the very nature of the case a writ of error cannot be an original action. A writ of error lies alone in behalf of a party or privy to an original suit already finally determined in the lower Court, and it must run against another party or privy to such original suit. A writ of error has no place in the law unless there has been an original action; and, where given scope, it is but a suit on the record in the original case.

The Supreme Court of the United States has several times said that a writ of error is rather a continuation of a certain litigation than the commencement of an original action, and we think that such it is, most manifestly. *Cohens* v. *Virginia*, 6 Wheaton, 410; *Clark* v. *Matthewson*, 12 Peters, 170; *Nations* v. *Johnson*, 24 Howard, 205; *Pennoyer* v. *Neff*, 95 U. S., 734.

A writ of error is like a new suit, in that it can be prosecuted only upon notice to the opposite party. But that notice need not be personal, as in the commencement of an original action; it may be *either personal or constructive*, as the State creating the tribunal may provide. 95 U. S., 734; 24 Howard, 206.

In 1865 Goyer and Johnson submitted themselves to the jurisdiction of the Probate Court of Ohio, for the purpose of settling their accounts, and then obtained a judgment in their favor. That

judgment was subject to review, and, if erroneous, to reversal, by error proceedings in the Court of Common Pleas. Rev. Stat. Ohio, Sec. 6708.

To obtain such revision or reversal, it was incumbent on the complaining party to give Goyer and Johnson, or the survivor of them, notice. Such notice was, by statute, authorized to be given in any one of three ways—namely, by service of summons on the adverse party in person, or by service on his attorney of record, or by publication. Rev. Stat., 6713.

Goyer being dead, and Johnson being a nonresident, and having no attorney in the State, publication was duly made at the instance of petitioner in error. That was all that was required by the law of Ohio, and we are of opinion that it gave the Appellate Court full jurisdiction of Johnson's person, and authorized any judgment that the merits of the case required, so far as he was concerned.

That Court had complete power to reverse the judgment of the Probate Court, if found to be erroneous, and either to render such judgment as should have been rendered below in the first instance or to remand the case for further proceedings in the latter Court. Rev. Stat., 6726.

The latter course was pursued, as has already been seen. Johnson, being properly before the Appellate Court by constructive service, was chargeable with notice of the reversal and remand of his case, and of the subsequent proceedings in the Probate Court, without additional notice by publication

or otherwise as to the steps taken under the *procedendo.*. In that way he had his day in Court when the large judgment was pronounced against him, and he is bound by it the same as if he had been personally served with process.

That constructive notice of a writ of error to a non-resident party, when such party was properly brought before the lower Court, is sufficient to bind him by the judgment or decree rendered in the Appellate Court, was expressly decided in the case of *Nations* v. *Johnson*, 24 Howard, 195. In that case Johnson had sued Nations in the Chancery Court in Mississippi for some slaves. Decree was for Nations, and he afterward removed himself and the slaves to the State of Texas. Johnson prosecuted a writ of error to the appellate Court of Mississippi, giving to Nations notice by publication only. The Appellate Court reversed the decree of the Chancellor and pronounced a decree in favor of Johnson.

Subsequently Johnson sued Nations in one of the District Courts of the United States, in the State of Texas, on his decree rendered by the State Court in Mississippi. Nations defended on the ground that he had not been personally served with notice of the writ of error to the Appellate Court. That question being decided against him, not upon the facts but upon the law, in the District Court, Nations prosecuted a writ of error to the Supreme Court of the United States, with the result already stated. In the opinion, Mr. Justice

Clifford, speaking for a unanimous Court, said: "No rule can be a sound one which, by its legitimate operation, will deprive a party of his right to have his case submitted to the Appellate Court; and where, as in this case, personal service was impossible in the Appellate Court, through the act of the defendant in error, it must be held that publication according to the law of the jurisdiction, is constructive notice to the party, provided the record shows that process was duly served in the subordinate Court, and that the party appeared and litigated the merits. * * * Common justice requires that a party, in cases of this description, should have some mode of giving notice to his adversary; and where, as in this case, the record shows that the defendant appeared in the subordinate Court and litigated the merits to a final judgment, it cannot be admitted that he can defeat an appeal by removing from the jurisdiction, so as to render personal service of the citation impossible. On that state of facts, service by publication according to the law of the jurisdiction and the practice of the Court, we think, is free from objection, and is amply sufficient to support the judgment of the Appellate Court." 24 Howard, 205, 206.

The same rule is announced in *Pennoyer* v. *Neff*, 95 U. S., 734.

Text-writers lay it down as a general rule that jurisdiction once acquired over the parties in the lower Court may be continued until the final

termination of the controversy in the Appellate Court by giving proper notice of the appellate proceedings, and that notice to a non-resident party by publication merely is sufficient. Freeman on Judgments, Sec. 569; 2 Black on Judgments, Sec. 912.

This rule commends itself to all men for its wisdom and justice. If it did not prevail, a man having an unjust judgment in a subordinate Court, might, by removal from that State, cut off, absolutely, the right of the adverse party to a hearing in the Appellate Court on writ of error; and, having done so, he might then enforce his unjust judgment. The adverse party would be powerless in such a case. He could get relief neither in the Courts of the State in which the judgment was rendered, nor in those of the State to which the other party had removed; for, in the former jurisdiction, the judgment would be conclusive upon him, and if he should go to the latter to relitigate his rights, he would be met and defeated by the previous adjudication of the same rights. One judgment would control the other, on the doctrine that the judgment of a competent Court in one State is entitled to the same faith and credit in the Courts of every other State as it would receive in those of the State where rendered; which doctrine will be considered hereafter.

It is not to be implied that Johnson and Goyer returned to Tennessee to hold or obtain any supposed advantage, for they were *bona fide* citizens.

of this State all along.    But the *bona fides* of the
removal does not affect the rule.

Having determined that the Courts of Ohio had
jurisdiction of the person and of the subject-matter
when the record sued upon was made, we next
pass to the consideration of its legal consequences
and evidentiary importance in the Courts of this
State.

Section 1, Article IV., of the Constitution of
the United States, provides that "full faith and
credit shall be given in each State to the public
acts, records, and judicial proceedings of every
other State; and the Congress may, by general
laws, prescribe the manner in which such acts,
records, and proceedings shall be proved, and the
effect thereof."

In pursuance of that authority, Congress passed
acts prescribing the manner in which the acts of
the Legislature, and the records and judicial pro-
ceedings of the Courts of any State or Territory
shall be proved in any other Court in the United
States; and declaring that "the said records and
judicial proceedings, so authenticated, shall have
such faith and credit given them in every Court
within the United States as they have by law or
usage in the Courts of the State from which they
are taken."    Rev. Stat. U. S., Sec. 905.

No question is made in the case before us with
respect to the authentication of the transcript sued
upon; hence, for the purposes of this investigation at
least, it is assumed to be sufficiently authenticated.

The transcript recites all the doings of the Appellate and Probate Courts as to the particular matters before them, and concludes with a final judgment, containing an itemized statement of the accounts of the executors with the estate of their testator, giving debits and credits in full, and finding a balance of $130,640 in the hands of the executors, which balance Johnson, as surviving executor, was ordered to distribute according to the will of the testator and the law of the case.

This constitutes a *judicial proceeding* within the meaning of the Constitution of the United States and the Acts of Congress, and as such the record is entitled to "such faith and credit" in the Courts of this State, as it has in the Courts of Ohio. The fact that the Probate Court did not adjudge that Johnson should pay a particular sum or sums to a particular person or persons, and award execution therefor, as is usual in money judgments, does not render what was done in and by that Court any the less a *judicial proceeding.*

The judgment rendered was a final adjudication of the questions before the Court, and its form was according to the statute of the State of Ohio.

Judgments of Probate Courts, when acting within the scope of their peculiar jurisdiction, as was true in this case, are binding upon the parties and their privies until reversed or set aside by appropriate proceedings brought for that purpose. 2 Black on Judgments, Sec. 633.

This is particularly true of judgments or orders

settling the final account of executors or administrators, and discharging them from their trust, or directing distribution of amount found in their hands—such judgments or orders being rendered after legal notice. 2 Black on Judgments, Secs. 643, 644.

The judgment in question could not, under the law of Ohio, have been more specific in terms or given more particular direction as to the beneficiaries. Though the Probate Courts of Ohio have "exclusive jurisdiction to direct and control the conduct, and to settle the accounts of executors and administrators, and to order the distribution of estates" (Rev. Stat., 534), they have no power, upon final settlement, to determine the state of the accounts between such officers and particular distributees, and to say to whom of the latter a balance may be due, and how much. They can only ascertain the amount remaining in the hands of the executors or administrators, and then direct its distribution *according to law*, leaving the state of the account between the parties to be inquired into when such order of distribution is sought to be enforced by the respective distributees. *Cox, Adm'r, etc.*, v. *John*, 32 Ohio St., 532; Rev. Stat., 6171.

If payment be not made in thirty days after time of settlement and order of distribution, any person claiming to be a distributee may file his petition in the Probate Court, stating the amount claimed by him, and requiring the execu-

tor or administrator to appear and show cause, if any he have, why judgment should not be rendered and execution awarded for same. Rev. Stat., 6195. Or he may sue, in like manner, in the Court of Common Pleas for his distributive share. Rev. Stat., 6200. And if no good cause is shown in defense of the claim of petitioner, judgment will be rendered and execution awarded according to the prayer of the petitioner. Rev. Stat., 6197.

Though many grounds of successful defense can be thought of, we need not undertake to enumerate them now. Nor would it be proper to decide, on demurrer, whether the matters of estoppel disclosed in the proof on another branch of this case, could be successfully relied on as a good defense to the judgment here sued on, since those matters do not appear on the face of the bill.

It may be well to observe at this point that the settlement of an executor's or administrator's accounts is conclusive in Ohio only as to matters or items therein specified and passed upon by the Probate Court. Rev. Stat., 6175, 6187, 6190; 25 Ohio St., 374.

The next inquiry is, Who can now maintain an action on the judgment sued upon?

As observed in a former part of this opinion, the widow of the testator failed to accept the provision made for her in his will, and thereby became legally entitled to one-third of his net personal estate. The judgment for $130,640 represents the whole of the personal estate after the

payment of debts and expenses. Hence, the widow was entitled to one-third of that sum; and, she having received more than her share—to wit, $61,040.10—neither she nor any one else can, in any event, recover again from the executors that one-third. The payment to her is a good defense to the extent of her interest in the fund. She is making no further claim, but the residuary legatees, in their bill, claim the whole fund. Of course they can, at most, recover only the other two-thirds.

The judgment gave them no right to demand more than their original shares, namely—one-fifth of two-thirds each. It did not adjudge, in fact, that they were, as individuals, entitled even to that. The adjudication was simply of the amount that was, or should be, in the hands of the executors after the payment of debts and expenses, and that such amount should be distributed according to the will and according to law. There is nothing in the will to give complainants any rights different from those they would have if mere distributees. Each of them takes and holds for him or herself his or her share distinct from and independent of the share of the others; and when he or she comes to establish his or her claim, it must be done in his or her own right, and not in the right of another.

Therefore, defense may be made as to each of them separately, and, if good cause be shown why any one of them should not have the judgment

and execution authorized by statute as to his or her particular share, that one must fail in his action.

The settlement and order of discharge, entered in 1865, was binding on all the complainants until set aside, reversed, or vacated; and to have it set aside, reversed, or vacated it was necessary that appropriate proceedings should be commenced in the Appellate Court within two years from the date thereof by persons *sui juris*, and by others within two years after the removal of the disability. Rev. Stat., 6723.

Mrs. Fitzsimmons was under the disability of coverture when the order was made, and has so continued until the present time. Twenty-two years after its entry she took the case into the Appellate Court, obtained a reversal and remand, and ultimately secured the judgment set up in the bill. Thus she took action in time, and relieved herself of the effect of the judgment of 1865.

Each of the other four complainants was free from disability, and all of them are, therefore, bound by the judgment of 1865, never having taken any steps to have the same set aside, reversed, or vacated. The action taken by Mrs. Fitzsimmons did not inure in law to their benefit. She, and she alone, is entitled to the legal benefit of her petition in error and the judgment of the Court of Common Pleas thereon. She alone was not barred by the two years' statute of limitations in which persons *sui juris* must begin error pro-

ceedings. The others had no right, when she filed her petition, that they could have asserted in the Appellate Court themselves, and, of course, none that she could assert for them.

The fact that one of them—Mrs. Young—joined her in the exceptions filed in the Probate Court, upon the *procedendo*, cannot make the case any better for that one. She had done nothing to be relieved from the judgment of 1865. The mere filing of exceptions in the same Court, without any relief previously granted in the Appellate Court, could be of no legal force or virtue whatever.

Nor can it be successfully contended by these four complainants, who never prosecuted any error proceedings, that the form of the judgment on the *procedendo* is conclusive in their favor.

That judgment does not mention their names or undertake to determine any question concerning them. It only ascertained the amount that was or should be in the hands of the executors, after payment of debts and expenses, and directed distribution; leaving those entitled, or claiming to be entitled to any part of the fund, to their remedy in an independent action. This remedy is now resorted to, and it is well met by *res adjudicata*. The former order discharging the executors still exists in full force as to these four complainants, and is a complete bar to their claims under the judgment sued on; and, showing that former order not set aside, reversed, or vacated as to them, is

showing good cause why they should not have recoveries now.

Again, the Probate Court had no means of ascertaining whether or not any particular distributees or legatees were barred by its former judgment; and if it had undertaken to adjudge such a fact, and had decided it as these four complainants now contend it should be determined, its judgment in that behalf would have been *coram non judice* and void.

We are aware that some of the Ohio cases announce the rule that the disability of one of several persons whose interests are joint and inseparable, will inure to the benefit of all, and save the bar of the statute of limitations as to those who are *sui juris*. But this is not such a case. The rights of these complainants are not inseparable. On the contrary, they are entirely distinct and independent of each other. True they all proceed from the same source—the will of the testator—but they are separate rights, and do not depend upon each other in any sense. One of the legatees may be paid in full without diminishing the amount due to another. One of them might sue for and recover his own share without in the least degree impairing the rights of the others. And so some may be barred without barring the others to whom the statute may not apply.

Where the rights of persons jointly interested, or interested alike in the same fund, are thus dis-

tinct and severable the disability of one is no protection to the others. This rule is recognized in several Ohio decisions. 13 Ohio St., 442; 10 Ohio, 11; 2 Ohio, 156; 1 Ohio St., 478.

None of the complainants, except Mrs. Fitzsimmons, can maintain a suit on the Ohio judgment. Even her right to do so is most earnestly contested in demurrer and in argument upon grounds not yet mentioned, and notwithstanding the relief given her in the Appellate Court. Her continuous disability is conceded by defendants, but in response to her disability they say that it did not prevent the statute of two years for error proceedings as to persons *sui juris* from running against her; and that contention is based upon the construction of other Ohio statutes, which will now be noticed.

By the Married Woman's Act of April 3, 1861, Sec. 2, the Legislature of Ohio provided, in substance, that the personal property belonging to a married woman at the time of her marriage, or coming to her during coverture by gift, bequest, or otherwise, together with all income, increase, and profits thereof, shall be and remain her sole and separate property; and, by Section 4996 of the Revised Statutes of that State, it is provided "that a married woman shall sue and be sued as if she were unmarried, and her husband shall be joined with her only when the cause of action is in favor of or against both her and her husband."

The contention is that, under these statutory

provisions, Mrs. Fitzsimmons was a *feme sole* as to the legacy sued for, and that as such she was subject to the same statutes of limitation as other persons *sui juris;* and that, having failed to file her petition in error within two years, she was barred, and the judgment of 1865, in favor of the executors, became absolutely conclusive and binding upon her.

The argument is plausible, yet it is in the face of the construction given those statutes by the Supreme Court of Ohio. It was expressly decided, in *Ashley* v. *Rockwell*, 43 Ohio St., 386, that while a married woman might sue and be sued as a *feme sole*, she was, nevertheless, entitled to the full benefit of the saving of all statutes of limitation in favor of persons under disability.

Besides, there is another all-sufficient reason why we cannot say that Mrs. Fitzsimmons did not file her petition in error soon enough. The Appellate Court of Ohio having entertained that petition and granted relief upon it, with jurisdiction both of the person and subject-matter, the Courts of this State will not inquire whether or not a statute of limitation of that State has been correctly applied by its own Court, but will accept the construction given as correct and conclusive.

This last observation would save the question for the other four complainants if they had filed petitions in the Appellate Court and obtained relief thereon; but it has no application to them under the facts of this case, and the rule referred to can avail them nothing.

Mrs. Fitzsimmons, and she alone, is entitled to maintain this bill. She may maintain it for one-fifth of two-thirds of the $130,640, subject to any and all defenses, whether of estoppel or otherwise, which could be successfully made in the Courts of Ohio; but even she can maintain it against Johnson alone.

The bill shows upon its face that Goyer, the other executor, died more than seven years before its filing. Goyer's executors relied upon our seven years' statute of limitations (Code, M. & V., §§ 3119 and 3483) in demurrer as absolute protection to · them and his estate. The Chancellor properly sustained this demurrer, and dismissed the bill as to all the complainants so far as it sought relief against the estate of Goyer or his executors. The statutes in question not only bar the remedy, but they extinguish the right of action against a dead man's estate, and afford absolute and unconditional protection against the suits of all persons, whether under disability or not. Code, § 3452 (M. & V.); 6 Yer., 225; 2 Swan, 512; 1 Head., 248; 11 Hum., 412; 7 Lea, 89; 11 Lea, 463; 16 Lea, 346; *Henderson* v. *Tipton*, 88 Tenn., 258.

The six months within which suit could not have been brought against Goyer's executors are not to be excluded from the period from his death to the commencement of the action in applying the seven years' statute. The rule excluding the six months applies where the statutes of two, of three, and of six years are pleaded, but it

is not applicable where the seven years' statute is relied on. The last named statute extinguishes the right, as just stated, while the others bar the remedy only.

The other aspect of the bill will now be considered. Johnson and Goyer had a transcript of John W. Todd's will and the probate thereof in Ohio registered in the Probate Court of Shelby County, Tennessee, and gave bond to administer his estate situated in this State. They made settlements accordingly in that Court in 1867 and 1868.

Those settlements are impeached in this bill, and recoveries are sought by complainants for Tennessee assets, alleged to have been received and not accounted for by the executors.

This part of the bill was dismissed on demurrer as to all the complainants except Mrs. Fitzsimmons, and it was dismissed as to her so far as she sought relief against the executors of C. W. Goyer, deceased.

For reasons already stated with reference to the seven years' statute of limitations, no recovery can be had by any of them against the estate or executors of Goyer.

What are the rights of complainants as against Johnson for unadministered Tennessee assets? He denies that they have any that can now be asserted, and by demurrer sets up our statute of limitations of ten years. Code, § 3473.

In determining the legal *rights* of complainants,

we apply the law of Ohio—the law of the domi-
cile; and in matters of *remedy* to be enforced
here, we give force to the law of this State—the
law of the *forum.* Meigs, 34; 1 Head, 583; 6
Lea, 473; 14 Lea, 299, 716; 2 Bax., 25; 3 Pickle,
445, 644.

By the law of Ohio, Mrs. Fitzsimmons took
the legacy under the will of her brother as her
sole and separate estate. Her husband had no
right or interest therein. There was, therefore, no
joint right in them that could be barred by any
statute of limitations as against a living person.
That being true, and she being all the while under
the disability of coverture, the ten years' statute
relied on has not even commenced to run against
her. Consequently, her remedy against Johnson
for her share of Tennessee assets is not barred.

What would have been the right or interest of
her husband, if it had been a Tennessee legacy,
and they were domiciled in this State, or whether
the statute would have run against her in that
case, is not decided.

The other four complainants are barred. They
waited twenty years after the final settlement made
in 1868 before bringing this suit. Some of them
were free from any disability during the whole of
that period, and the others were *sui juris* more
than ten years of the time.

The bill was answered in its second aspect by
Johnson, and, upon the hearing, the Chancellor
adjudged that Mrs. Fitzsimmons was entitled to

recover from him one-fifth of two-thirds of the Tennessee assets, which had not been accounted for, to ascertain the amount of which a reference was made. The Master reported $624.18 in her favor. Exceptions by both sides were overruled, and the report confirmed and decree rendered for sum mentioned. Both parties now complain of this result.

The decree is right. All material questions of law touching its correctness are embraced in what has already been said in this opinion, and the matters of fact concerning the amount recovered are conclusively settled by the concurrence of the Master and Chancellor with respect thereto. *Turley* v. *Cooley*, 3 Leg. R., 193; *Brown* v. *Dailey*, 1 Pickle, 218; *Turley* v. *Turley*, 1 Pickle, 251.

Reverse the decree so far as it dismissed that part of the bill in which Mrs. Fitzsimmons sought a recovery on the Ohio judgment, and remand for answer by Johnson as to that part of the bill. Affirm in other respects.