IRVING'S ADMR. v. IRVING'S ADMR.

A son who was administrator of his father's estate, and in that capacity hired out a negro girl, named Hannah, as the property of such estate, also claimed another girl "Nancy," by purchase from his father in his lifetime. In an action instituted against the son's admr. after his decease, for the recovery of "Nancy" and her descendants, founded on the alleged fraud or mistake of the son in claiming Nancy, when Hannah was the slave actually sold to him by his father, the acts of the son as admr. of his father, in hiring out Hannah under the direction and supervision of the county court, and retaining possession of the slave "Nancy," will be admitted to go in evidence to the jury—it being proved that Hannah, at the time of his father's decease, was the more valuable negro of the two.

Such acts being similar to declarations made by him against his interest, are admissible evidence, and if corroborated by other testimony, may be sufficient to justify the verdict in his favor.

ERROR to the circuit court of Lafayette county.

*Wilson,* for plaintiff in error:

The questions raised on the record, and which will be insisted on by the plaintiff in error, are as follows:

1. That the court erred in permitting the defendants to prove the acts of Joseph Irving, as administrator of his father, to show the property in the negroes in dispute were his property; this embraces the objection to the defendant's 2d, 3d and 4th instructions, and the 11th of the plaintiff.

2. That the weight of testimony was in favor of the plaintiff, and the court ought to have given a new trial—

see Clemens v. Laveille and Morton, 1 Sem. an. part De. S. C. and a case decided at the last term of this court. The first point, as to the improper evidence which the court permitted the defendant to give. If this is law, then all that an administrator has to do to get a right to property upon which he administers, is to use it as his own, refuse to acknowledge that it belongs to the estate, and then when the proper person comes to claim it, this is to be shown to prove the right to be in him; at least it is to be *some evidence,* if not enough to set up title upon.

As to the weight of evidence, I think that is clearly with the plaintiff; all the witnesses but one, speak of Hannah as being given to young Irving, and not Nancy.

*Todd* and *Hayden,* for defendants in error:

The defendants contend that the court below decided correctly, in permitting them to prove,

1. That Joseph Irving, as administrator of his father, took Hannah in possession as the property of the estate, and hired her out.

2. That she died, and he, as administrator, paid and was allowed her expenses of sickness.

3. That he exercised a personal ownership in his own right to Nancy until his death.

The sale of one of the girls to Joseph Irving, jr. is a matter proven by plaintiff; and his contest in proof, is to establish Hannah, who died, to be the one sold. The defendants equally prove the purchase, and contend in proof that Nancy was the slave purchased; and both parties introduced all their positive proof to that point. The defendants insist these facts offered by him to be proven, are facts presumptively proving their position of identity to Nancy, and cite, to prove declarations accompanying possession are *res jesta,* and may be given combined with acts, Wallace v. Foster, 2 Mo. Rep., Nowlin v. Foster, 1 part, 22; 4 Pickering, 378; Starkie, 46, and Seg. 306–7; 1 Esp. Rep. 329; 1 Salk. 285; 6 East, 193.

These declarations and acts done are contended, on rebutting evidence to show that the fact of admission by Joseph Irving, jr. to a witness disclaiming ownership to Nancy, was not true, and disproving that testimony—see Mo. Dec. 1st Term, 22, Nowlin v. Fosters.

These declarations are admissible, and could not be objected to; because the plaintiff had introduced the same declaration by Jos. Irving, jr., of property in Nancy.

The acts of hiring and presumptively accounting for Hannah's hire, and paying her expenses, are public acts of record; notice to heirs and representatives, and the time of so hiring Hannah, are presumptions of acquiescence in all the heirs and representatives in this claim of administrator to Hannah, and of his own personal claim to Nancy.

The act of personal possession of Nancy in his own right, for eight or ten years, his declarations of ownership, show a quiet possession against the distributees of the estate beyond the statute of limitations, and are evidence of acquiescence in those interested in his personal claim to Nancy.

The defendants insist that the court correctly rejected the plaintiffs' three instructions; the first and last upon the same grounds above stated, as they call up the same points involved in the admission of evidence offered by defendants and admitted. The second instruction, was to reject the evidence of Jack, one of the administrators defendant. This it is insisted is correct, because it was an objection to competency, on the score of interest, which the plaintiff must make when the witness is offered. No objection being then made and the evidence given, the assent of plaintiff is presumed; and evidence once given, without objection, ought not to be withdrawn—see Mo. Rep.

The evidence is competent, being of facts prior to his administration—see Digest, Mo., page —.

As to the third instruction, it is clearly competent for an administrator, by acts, to prove separate right of property in possession, and to show acts to prove his fiduciary possession. The defendants insist the three instructions given at the defendants' request were correct. 1. The proof of both admits a good purchase, and for value, between father and son, for a negro girl, either one or the other, 213, upon the same reasons heretofore adduced to prove the declarations and acts of defendants intestate, to show presumptively a right to Nancy and her children.

If the positions above assumed by the counsel for the appellees be correct, it follows irresistibly, that the motion for a new trial, made by the appellants, was properly overruled; and it is contended that the evidence given upon the trial of the cause, greatly preponderated in favor of the appellees, and well warranted the finding of the jury.

Statement of the case made and opinion of the court delivered by TOMPKINS, Judge.

This was an action commenced in the circuit court by the plaintiffs in error against the defendants in error, for certain slaves. In that court the defendants had judgment, and to reverse it this writ of error was sued out. On the part of the plaintiffs, one witness testified that about fifteen or sixteen years ago, (meaning before he gave in his evidence,) he resided in the Petit Osage (Little Osage) bottom, in Saline county, in this State, and that Joseph Irving, junior, the defendants' intestate, came into that bottom to improve a place for his father, Joseph Irving, senior, the plaintiffs' intestate. That in the spring of the year, Joseph Irving, senior, sent up a negro girl to cook and keep house for the laborers employed in making the improvement; that the girl so sent was of a dark color, supposed to be about fifteen or sixteen years old, her name not remembered; perhaps in the same year, Joseph Irving, senior, moved up and settled on the said place improved by his son; that he and his son, Joseph Irving, junior, continued to reside on the same place together, until sometime in the year 1819, when Joseph Irving, senior, became sick, and was, as he supposed, about to die, and proposed to the witness to write his will; that Joseph Irving, junior, was present, and the old man said he had sold some land in Tennessee for about seven or eight hundred dollars, belonging to the said Joseph, junior; that he had given him two horses, a wagon, and some money, and a negro girl, for the consideration of the land sold in Tennessee. The witness said he understood that it was the negro girl which had been first sent up to cook, &c., for Joseph junior, when he came up to improve the place; that the said Joseph, junior, and Joseph, senior, talked the matter over about selling the land in Tennessee, and about the horses, wagon, money, and negro, given him by the old man for the money received for the land. That the witness then went for Mr. Howard Everett, a neighbor of said Irving, to get him to write the will, but that on his return with Mr. Everett, the old man was better, and nothing further was said, as far as he knew, about the will, or negro, money, wagon and horses, or land sold in Tennessee. About a month after, the old man died. The witness said that although at one time he had thought the name of the negro which the old man said, in the presence of Joseph, junior, he had given to him was Nan-

cy; yet from what he had heard since, he thought it was Hannah; it was the girl he had first sent to the place to cook, &c., (as he had before stated;) was the one that the old man said he had given to Joseph, junior, and that he remembered she was of a dark color. The witness further stated that all he remembered about the matter was but his impressions, and that they were not very strong. Another witness, introduced by the plaintiff, stated that he knew the negroes of the elder Irving at the time spoken of by the first witness; that Irving, senior, had two girls, one named Hannah, of a dark color, the same sent up to cook, &c., as before stated, then aged fifteen or sixteen years; and another yellow girl, named Nancy, then aged nine or ten years; that Joseph, junior, lived with his father till the time of his death; and that both the girls were also in the family of the father.

It was further proved that Joseph, junior, kept said girl, Nancy, in his possession during his lifetime, and that she had several children; that she and her children had been hired out by the defendants in this action, since the death of said Joseph Irving, junior. The plaintiffs then examined, by consent of the defendants, one Isham Arthur, who had married a daughter of Irving, the father, who had a child by her, but whose wife was dead. This witness testified that he knew the two girls, Hannah and Nancy; that Hannah was dark colored, and that Nancy was yellow; that he had seen Nancy in possession of Joseph Irving, junior, the defendants' intestate, since the father's death; and that several years after the death of Joseph Irving, senior, he had heard the son say he had no claim to Nancy, and did not own her; that he intended to sell her as the property of the estate of his father, and that he intended to buy her.

The defendants then introduced William Jack, one of the defendants, as a witness. He stated that a few days before the death of Joseph Irving, senior, he called to see him; that the old man told him he expected to die soon, and wished him to write his will. The witness declined complying with this wish, suggesting to the old man that he was probably in no danger of dying till he could procure some more capable person to do the business. The old man then said he had left some children in Tennesse for whom he had done as much as he thought he ought; that he had sold some land in Tennessee belonging to Joseph Irving, junior, his son, for about seven or eight hundred dollars, and that he had given to him, in lieu of the purchase money, two horses, a wagon, some money, and

a negro girl called Nancy. The possession of the woman Nancy and her children sued for was admitted by the defendants and their intestate. The defendants then proved that Joseph Irving, junior, as administrator of his father, Joseph Irving, senior, for several years hired out, as the property of the estate, the negro girl Hannah, and did not hire out the negro girl Nancy; that Hannah became sick and died, and that the expenses of her sickness had been defrayed out of the estate of Joseph Irving, senior. To the admission of this testimony the plaintiff objected, and the court overruling his objection, he excepted to its opinion. The testimony being closed, the plaintiff prayed the court to instruct the jury:

1. To disregard all the evidence about the hiring out of the negro girl Hannah by Joseph Irving, junior.

2. To disregard the evidence of William Jack, one of the defendants in this cause.

3. That any acts of ownership over the girl Nancy by Joseph Irving, junior, while he was administrator of his father, is no evidence to prove she was his property.

These instructions were refused, and the plaintiff excepted. The court then, on the prayer of the defendant, instructed the jury:

1. That if a consideration in money had passed from the younger to the elder Irving for the negro girl, the sale was good, whether it were by deed or by parol.

2. That although the hiring out of Hannah did not show a title to Nancy, yet it is a circumstance from which they may infer that Nancy was intended to be given in the place of Hannah.

3. That although the acts of ownership exercised by Joseph Irving while he was administrator are not sufficient evidence of title, yet connected with other testimony, they are evidence for as much as they are worth. To the giving of these instructions the plaintiff also excepted. The verdict of the jury being for the defendants, the plaintiff moved for a new trial:

1. Because the verdict was contrary to the evidence.

2. Because the verdict was contrary to the weight of evidence.

3. Because the court misinstructed the jury.

4. Because the court refused to instruct the jury as prayed by the plaintiff.

The several matters excepted to are assigned for error.

The points made by the plaintiff in error are, 1. That the court erred in permitting the defendants to prove the acts of Joseph Irving, junior, as administrator

3

SEPT. TERM, 1837.

Irving's Admr.
v.
Irving's Admr.
A son who was administrator of his father's estate, and in that capacity hired out a negro girl, named Hannah, as the property of such estate, also claimed another girl "Nancy," by purchase from his father in his life-time. In an action instituted against the son's admr. after his decease, for the recovery of "Nancy" and her descendants, founded on the alleged fraud or mistake of the son in claiming Nancy, when Hannah was the slave actually sold to him by his father, the acts of the son as admr. of his father, in hiring out Hannah under the direction and supervision of the county court, and retaining possession of the slave "Nancy," will be admitted to go in evidence to the jury—it being proved that Hannah, at the time of his father's decease, was the more valuable negro of the two. Such acts being similar to declarations made by him against his interest, are admissible evidence, and if cor-

of his father, to show that the negroes in dispute were his property. 2. That the weight of testimony was in favor of the plaintiff in error.

TOMPKINS, Judge.—The act concerning executors and administrators, requires them to file an inventory of all the property of the deceased under oath, and gives to any person interested in the estate of the deceased the right to file an affidavit, stating that such person has good cause to believe that any person has concealed or embezzled any goods, &c., and the court is directed to investigate the matter—see last Revised Code, pages 46 and 47. Under the direction too of the county court, executors and administrators are required to hire out the slaves of the deceased. It was in evidence that the intestate of the defendants in error did, for several years, hire out this negro, Hannah, as the property of the estate of his intestate, at a time too, when from her age, (she being about fifteen or sixteen, while the other was only eight or ten years old,) it is fairly to be presumed she was more valuable than the other, Nancy, which he retained in his own possession, and that in so doing he acted against his own interest. It was also in evidence that she was the more valuable of the two. It is not pretended that the negro, Hannah, was not returned on the inventory directed to be filed with the clerk of the county court, as the property of the intestate. We are then left to presume that the administrator did his duty, and that as he hired her out as the property of the estate, so he returned her on the inventory as the property of such intestate. These acts done by the administrator, under oath, under the inspection of a court appointed by law to control him in his settlement of the estate, in open court, in the constructive and probably in the actual presence of creditors and distributees, and contrary to his own interest at the time, the correctness of none of which were called in question by any one interested, appear to this court to be admissible as evidence to prove which of the two slaves the father intended to sell to the son. Had Joseph Irving, junior, in the presence of the other representatives of the intestate asserted in conversation his right to this slave, by purchase from his father, and that the other (Hannah) was not the slave sold him by the father, nobody would deny that this conversation, if uncontradicted or undisputed by them, might be given in evidence of their admission of his right; weak it might be, but it would be admissible. For much

better reason, we think his public acts in hiring out Hannah, and his exercise of the right of property for so long a time undisputed, and contrary to his own interest, ought to be permitted to go to the jury for as much as it is worth. The circuit court then, it appears to us, committed no error in this.

But secondly, we are told that the evidence preponderated greatly in favor of the plaintiff. Gilliam, the first witness examined by the plaintiff, to identify the negro sold by the elder Irving to his son, the intestate of the defendants, after stating that he heard the conversation between the father and the son about the sale of the land lying in Tennessee, and the property, money, &c., given by the father to the son, closed by saying that all he remembered about the matter was but his impressions, and that they were not very strong. Arthur, the brother-in-law of the the defendants' intestate, speaks only of declarations made by the intestate that Nancy belonged to the estate of his father and not to him, that he intended to buy her, &c. To this testimony of Gilliam and Arthur is opposed the positive testimony of William Jack, one of the defendants. The statute makes Jack a competent witness, and he is certainly no more interested in the estate of his intestate than Arthur is in that of the plaintiffs' intestate, of which his son is a distributee. When we add to the weight of Jack's testimony that of the acts of Joseph Irving, junior, in his character of administrator of his father's estate, acts done under the inspection of the county court, and in the constructive, if not actual presence of many persons interested in the event, and for so long a time passing under review without censure, and above all, evidently contrary to his own interest, we are inclined to think that the jury did not find their verdict contrary to the weight of evidence, and that the circuit court committed no error in refusing to grant a new trial. Its judgment is therefore affirmed.

EDWARDS, Judge.—Having heard the re-argument on the first point in the above cause, that is, whether "the court erred in permitting the defendants to prove the acts of Joseph Irving, junior, as administrator of his father, to show that the negroes in dispute were his property," I concur in the opinion delivered.

roborated by other testimony, may be sufficient to justify a verdict in his favor.