Paper Co. *v.* Shyer.

PAPER Co. *v.* SHYER.

*(Nashville.* March 22, 1902.)

JUDGMENT. *Against nonresident void, when.*

A personal judgment for money rendered against a nonresident, who is not served with process and does not appear, in a proceeding by attachment of his property, subjecting the attached property and awarding execution for the unsatisfied balance and costs, is *corum non judice* and void, as being without "due process of law," although authorized by statutes of the State, when called in question either in the courts of this State or of another State, so far as it exceeds the amount for which the attached property is sold.

Constitution construed: U. S. Const., XIV Amendment.

Code construed: §§ 5238, 5284, 5286, 5298 (S.); §§ 3478, 3524, 3526, 3538 (M. & V.); §§ 4219, 4265, 4267, 4279 (T. & S.).

Cases cited: Kyle *v.* Phillips, 6 Bax., 43; Walker *v.* Cottrell, 6 Bax., 269; Taylor *v.* Rountree, 15 Lea, 725.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. H. H. COOK, Ch.

STOKES & STOKES for Paper Co.

MAURICE GLICK for Shyer.

CALDWELL, J. A. W. Shyer, of Nashville, Tennessee, claimed that the Kemper-Thomas Paper

Company, of Ohio, was indebted to him, and that
Lebeck Brothers, also of Nashville, were indebted
to the Paper Company. He brought his statu-
tory attachment and garnishment suit before a
Justice of the Peace, in Nashville, and obtained
a judgment against the Paper Company, his debt-
or, for $299.38, and against its debtors, Lebeck
Brothers, as garnishees, for $85.44. As to the
Paper Company, which was sued as a non-resident
and failed to appear, the proceeding was by at-
tachment and publication; as to Lebeck Brothers,
it was by attachment and personal services of
garnishment process, the indebtedness from Lebeck
Brothers to the Paper Company being the only
property attached.

Some two years after crediting his judgment
against the Paper Company by the amount of
the garnishment judgment, which was promptly
paid, Shyer took out an execution for the bal-
ance of his judgment against the Paper Company
and caused garnishment process to be issued there-
on against other Nashville debtors of the Paper
Company. These latter garnishees, Cline & Gor-
don, after judgment had been rendered against
them for $90.00, notified the Paper Company of
the fact, and some days later they paid that
judgment over the protest and warning of the
Paper Company.

Thereupon the Paper Company filed the present
bill in equity, challenging the judgment for

$299.38, so far as it exceeded the indebtedness of Lebeck Brothers, the property attached, and also the execution for that excess, and the garnishment proceedings thereon as void *ab initio,* for lack of jurisdiction to adjudge that excess, and seeking appropriate relief against them.

The Chancellor dismissed the bill on demurrer, the Court of Chancery Appeals reversed his decree, and the defendants appealed to this Court.

The determinative question is this: Did the Magistrate have jurisdiction to render judgment for $299.38 against a nonresident, in Court by publication and attachment only, when the debt garnisheed, the sole property attached, amounted to only $85.44, or was his jurisdiction limited to the latter sum?

The larger jurisdiction undoubtedly existed if our State statutes are to be regarded as a controlling criterion. This readily appears when some of the provisions of these statutes, which prescribe the mode of suing nonresidents without personal service, are quoted. For instance, "The attachment and publication are in lieu of personal service upon the defendant, and the plaintiff may proceed upon return of the attachment, duly levied, *as if the suit had been commenced by summons."* Shannon's Code, § 5284. "Should the defendant appear in time, he will make defense, and the cause proceed as if the suit had been commenced by personal service of process. If he

fail to appear or make defense, *the plaintiff may take judgment at law, or obtain a decree in equity, in like manner as if the defendant had failed to appear and defend upon personal service of process."* Ib., 5286. "Where the property, choses in action, or effects of the debtor are in the hands of third persons, *or third persons are indebted to such debtor, the attachment may be by garnishment."* Ib., 5238, and, "When the property attached is not sufficient to satisfy the recovery, execution may issue for the residue, as in other cases." Ib., 5298.

Here, then, is the amplest statutory authority for a creditor to sue his nonresident debtor by attachment and publication, and obtain a recovery for the full amount of indebtedness shown, and for the issuance of an execution for the residue thereof after the application of the property attached, and that is exactly the course pursued by the present defendant, Shyer.

Moreover, that authority has been recognized and applied, more than once, by this Court. In *Kyle* v. *Phillips,* 6 Bax., 43, a vendor of land in this State was permitted not only to enforce his lien by judicial sale of the land, but also to have a decree for the balance of his debt against his vendee, who was a nonresident, and in Court by publication only; and his decree for such balance was enforced by supplemental attachment bill against other land of the defendant.

The publication in the first instance without valid
attachment was said to have given the Court
jurisdiction of the person of the defendant and
authorized a decree for the whole debt. Ib., 45.
And though not a question under direct consider-
ation at the time, the Court, in the course of
the opinion delivered in *Walker* v. *Cottrell,* 6
Bax., at page 269, said: "So when the property
(attached) is not sufficient to satisfy the recovery,
execution may issue for the balance due, as in
other cases," citing the provision of the statute
last quoted herein.

Again, in *Taylor* v. *Rountree,* 15 Lea, 725, a
decree of foreclosure and for the full amount of
the mortgage debt was rendered against all the
defendants, including some nonresidents, who were
in Court by publication only; and, after the land
had been sold for less than half the recovery, a
bill of review brought by the nonresidents for
relief against the balance, on the ground that
they were not in Court as to that, was dismissed
on the authority of *Kyle* v. *Phillips, supra,* and
the statutes heretofore mentioned.

But the Paper Company takes the position, in
effect, that those statutes and decisions are in the
face of the Federal Constitution in so far as
they would authorize a personal, or mere money,
recovery against a nonresident on publication only,
or on publication and attachment for an amount
in excess of the salable value of the property

impounded. If that be true, those statutes and decisions are in reality no authority at all for such recovery, for that instrument, when applicable, as it is in every such case, is the supreme law.

Although largely so, the different States of the Union are not entirely independent. Having surrendered some of their powers of sovereignty to the general government by the Constitution, they are subject to that instrument, properly interpreted and applied. With that exception, however, "every State possesses exclusive jurisdiction and sovereignty over persons and property within its territory," and, as a consequence, "no State can exercise direct jurisdiction and authority over persons or property" in any other State.

Yet, a State's exercise of its proper powers of control within its borders may sometimes indirectly affect property or persons beyond its borders, the persons in the one instance, and the property in the other, being within its jurisdiction. Thus the State, through its tribunals, may compel persons domiciled within its limits to execute, in pursuance of their contracts respecting property elsewhere situated, instruments in such form and with such solemnities as to transfer the title, so far as such formalities can be complied with, and the exercise of this jurisdiction in no manner interferes with the supreme control over the property by the State within which it is sit-

24 P—29

uated. *Penn* v. *Lord Baltimore,* 1 Ves., 444; *Mossie* v. *Watts,* 6 Branch, 148; *Watkins* v. *Holman,* 16 Pet., 25; *Corbett* v. *Nutt,* 10 Wall., 464.

"So the State, through its tribunals, may subject property situated within its limits (and) owned by nonresidents, to the payment of the demand of its own citizens against them; and the exercise of this jurisdiction in no respect infringes upon the sovereignty of the State where the owners are domiciled. Every State owes protection to its own citizens, and when nonresidents deal with them, it is a legitimate and just exercise of authority to hold and appropriate any property owned by such nonresidents to satisfy the claims of its citizens." *Pennoyer* v. *Neff,* 95 U. S., 722, 723.

The property of the nonresident may be so appropriated by bill in equity on publication only when the citizen has a lien ready to be enforced as in *Kyle* v. *Phillips,* 6 Bax., 43), or by attachment, creating a lien where none existed before, and publication. *Boswell* v. *Otis,* 9 How., 336; *Roller* v. *Holly,* 176 U. S., 405, and the debt of a resident to a nonresident is property in the State of the former, in such sense that it may be attached and subjected, by garnishment and publication, to the indebtedness of the nonresident to another citizen, as was done in the present instance. Shannon's Code, §§ 5238, 5239;

*Chicago, etc., Railway Co.* v. *Sturm,* 174 U. S., 710; *King* v. *Cross,* 175 U. S., 396.

Nevertheless, what has been said thus far does not explicitly solve the question of greatest controversy in this cause, namely: whether or not the Legislature of this State may validly grant and one of its judicial tribunals may validly exercise the prerogative of rendering a personal judgment against a nonresident without personal service or appearance, for the full amount of his indebtedness, though more than the value of his property seized, and of awarding an execution for so much of the judgment as remains unpaid after a proper appropriation of the property.

It is a universal rule, founded on the plainest dictates of justice, that no man's personal rights can be affected by judicial proceeding without his day in Court. In actions purely personal, he is entitled to personal service on himself or on some one standing before the law as his proper representative, and no valid personal recovery can be had against him without such service. This is elementary.

And still, as has just been seen, personal service is not essential in actions brought against nonresidents, to subject property within the local jurisdiction of the Court. In such proceedings the property, being already charged with a lien, or being so seized as to create one, stands, so to speak, in the place of its nonresident, non-

sued and non-appearing owner; and notice by publication, as constructive or substitutional service, is sufficient. This is likewise plain law.

But *how far* does the lien encumbered, or the impounded property of such an owner stand in his place before the Court? It is undoubtedly true that the previous existence of the lien in the one instance, or the seizure of the property in the other, with publication, and without more, gives the Court jurisdiction for the necessary purposes of the particular litigation; but how far is that? To what extent does such substitutional service give him his day in court? To the extent of authorizing (1) a personal judgment for the whole debt claimed against him, though in excess of the salable value of the property in question; (2) the appropriation of the property, and (3) an execution for the balance, or only to the extent of authorizing (1) a mere ascertainment of the indebtedness, and (2) the appropriation of the property, without more?

In the absence of our statutes and decisions already mentioned, these questions would seem to answer themselves. And the answers would be that the property in such case represents its owner in a qualified sense only; that it stands in his place before the Court just as it stands for his debt, to the extent of its selling value, and no further; that the property's representation of its owner can be no larger or greater than

itself, and is measured by its own pecuniary capacity; that its symbolical or legal presence affords him his day in Court to that extent, and for the purposes of the appropriation of the property, but not otherwise.

The latter class of actions, though not strictly so, are usually called actions *in rem,* and titles acquired under them are sustained on that ground. They are really in the nature of proceedings *in rem,* or *quasi in rem,* as some courts have aptly called them (*Freeman* v. *Alderson,* 119 U. S., 187), and, being so, they are inherently self-limiting, and carry only that measure of jurisdiction requisite to the proper disposition of the property in question, the *res* before the Court. Consequently judgments or decrees therein that go beyond that limit are to the extent of the excess held to be *coram non judice* and void. The Supreme Court of the United States has so stated in numerous cases, either by way of actual decision or as a legitimate opinion appropriately expressed *arguendo.* In *Boswell* v. *Otis,* the Court said: "When the record of a judgment is brought before the Court, collaterally or otherwise, it is always proper to inquire whether the Court rendering the judgment had jurisdiction. Jurisdiction is acquired in one of two ways; first, as against the person of the defendant, by service of process; or, secondly, by a procedure against the property of the defendant, within the jurisdiction of the

Court. *In the latter case, the defendant is not personally bound by the judgment beyond the property in question.* And it is immaterial whether the proceeding against the property be by attachment or bill in Chancery." 9 How., 348.

Construing and applying our attachment statutes, the Court, in *Cooper* v. *Reynolds,* 10 Wall., 318, observed that a suit, under them, in which the defendant is not personally served with process and does not appear, is "in its essential nature, a proceeding *in rem,* the only effect of which is to subject the property attached to the payment of the demand, which the Court may find to be due to the plaintiff, . . . *the judgment of the Court,* though in form a personal judgment against the defendant, *has no effect beyond the property attached in that suit. No general execution can be issued for any balance unpaid after the attached property is exhausted.* No suit can be maintained on such a judgment in the same Court, or in any other, nor can it be used as evidence in any other proceeding not affecting the attached property, *nor could the costs in that proceeding be collected of defendant out of any other property than that attached in the suit."*

Taking up the opinion in *Pennoyer* v. *Neff,* 95 U. S., 723, where the quotation already made herein ends, it will be seen that the Court there goes on to say: "It is in virtue of the State's

jurisdiction over the property of the nonresident situated within its limits that its tribunals can inquire into that nonresident's obligations to its own citizens, *and the inquiry can be carried only to the extent necessary to control the disposition of the property.* If the nonresident have no property in the State, there is nothing upon "which the tribunals can adjudicate."

These views are not new. They have been frequently expressed with more or less distinctness, in opinions of eminent Judges, and have been carried into adjudications in numerous cases. Thus, in *Picquet* v. *Swan,* 5 Mo., 35, Mr. Justice Story said: "Where a party is within a territory, he may justly be subjected to its process, and bound personally by the judgment pronounced against him. Where he is not within such territory, and is not personally subject to its laws, if on account of his supposed or actual property being within the territory, process by the local laws may, by attachment, go to compel his appearance, and for his default to appear, judgment may be pronounced against him; but such a judgment must, upon general principles, be deemed only to bind him *to the extent of such property,* and cannot have the effect of a conclusive judgment *in personam,* for the plain reason that *except so far as the property is concerned,* it is a judgment *coram non judice."* 95 U. S., 723, 724.

Paper Co. *v.* Shyer.

Then, after quoting from the 9th Howard and 10th Wallace cases, *supra,* and several others, and after elaborate and learned discussion of the same and cognate questions in different views, on page 733 of the same opinion, the Court, placing the case upon a hitherto unused and apparently impregnable ground, remarked: "Since the adoption of the fourteenth amendment to the Federal Constitution, the validity of such judgments may be directly questioned, and their enforcement in the State resisted, on the ground that proceedings in a court of justice to determine the personal rights and obligations of parties over whom that Court has no jurisdiction, do not constitute due process of law. Whatever difficulty may be experienced in giving to those terms a definition which will embrace every permissible exertion of power affecting private rights, and exclude such as is forbidden, there can be no doubt of their meaning when applied to judicial proceedings. They then mean a course of legal proceedings according to those rules and principles which have been established in our systems of jurisprudence for the protection and enforcement of private rights. To give such proceedings any validity, there must be a tribunal competent by its constitution—that is, by the law of its creation—to pass upon the subject-matter of the suit; and, if that involves merely a determination of the personal liability of the defendant, he must be brought within its

jurisdiction by service of process within the State, or his voluntary appearance." 95 U. S., 733.

All of the language herein, taken from *Cooper v. Reynolds, supra,* and much of that taken from *Pennoyer* v. *Neff, supra,* in reference to the absolute limitation of the tribunal's jurisdiction in a proceeding *quasi in rem,* to the disposition of the nonresident's property thereby brought into *custodia legis,* was repeated with approval, and adopted as expressive of the Court's opinion in *Freeman* v. *Alderson,* 119 U. S., 185. That opinion continues: "To this statement of the law may be added, what, indeed, is a conclusion from the doctrine that, while the costs of an action may properly be satisfied out of the property attached, or otherwise brought into the control of the Court, no personal liability for them can be created against the absent or nonresident defendant; *the power of the Court being limited, as we have already said, to the disposition of the property, which is alone within its jurisdiction."* In a later case the same Court announced the same doctrine, saying: "A judgment without personal service against a nonresident is *only good so far as it affects the property* which is taken or brought under the control of the Court or other tribunal in an ordinary action to enforce a personal liability, and no jurisdiction is thereby acquired over the person of a nonresident *further than respects the property so taken.* This is as

true in the case of an assessment against a non-resident, of such a nature as this one, as in the case of a more formal judgment." *Dewey* v. *City of Des Moines,* 173 U. S., 203. The second head note of *Grover & Baker Sewing Machine Co.* v. *Radcliffe,* 137 U. S., 287, as reported by L. C. P. Co. (Book 34, p. 670), is as follows: "A personal judgment is without validity if rendered by a State Court in an action upon a money demand against a nonresident of the State, upon whom no personal service of process within the State was made, and who did not appear."

Touching the force of an Ohio judgment in this State, this Court, in *Fitzsimmons* v. *Johnson,* 90 Tenn., 424, made the following observations: "It is now well settled that a *personal* judgment against a nonresident, rendered in an *original* suit, upon constructive notice—that is, upon notice by publication merely, is an absolute nullity, and of no effect whatever. Though a State may adopt any rules of practice and legal procedure, she may deem best as to her own citizens, she can adopt none that will give the Courts jurisdiction of nonresidents so as to authorize *personal* judgments against them without personal service of process upon them.

"By *personal judgments,* we mean judgments *im personam*—as for payment of money—in contradistinction from judgments *in rem,* whereby the

property of nonresidents, situated within the territorial limits of the State, may be impounded; for when nonresidents own property in a particular State, it is subject to the laws of that State, and may be attached or otherwise brought into *custodio legis* as security for the debts of the owners, and actually sold and applied by direction of the Court, without personal service and by constructive notice merely."

The cases in which other State Courts have announced the same doctrine and limited judgments against absent nonresidents to a disposition of the property in suit are too numerous to be mentioned. For some of them, see note 16, L. R. A., pp. 231, 232; 50 L. R. A., note, pp. 581, 582, 583; 9 Rose's notes, U. S. R., pp. 341 to 345; Brannon, 14th Am'd't, Ch. 13.

The fact should not be overlooked, however, that in many of the earlier and in some of the later decisions in the States, this doctrine has been deemed applicable alone when enforcement was attempted in some other State, and not when such attempt was made in the State whose tribunal pronounced the judgment. It is upon this construction that the present defendants take their final stand and say that this judgment, though it were conceded to be non-enforceable in another State, is, nevertheless, enforceable here. This position, in our opinion, is illogical and inherently unsound. Since jurisdiction of the person of the

defendant is always essential to the validity of a personal judgment against him, and since the jurisdiction of a non-served and non-appearing nonresident is limited to the appropriate disposition of his property brought under the control of the Court in the particular proceeding, it is inevitable that any judgment therein that goes beyond that object, and requires him to pay money in addition, is, in the latter respect, wholly without jurisdiction, and, therefore, to that extent invalid everywhere. Jurisdiction of the person to the full extent of the Court's judgment is just as indispensable to its entire validity in the State where pronounced as it is elsewhere, and partial jurisdiction, so to speak, or jurisdiction for a single purpose, or to a limited extent, as for the appropriation of certain property in the State, can be no more efficacious to validate a judgment in excess of that jurisdiction in the one place than in the other. If such judgment be valid in the State of its rendition, it is valid in other States also, and if it be invalid in other States, it is likewise invalid in that State. Jurisdiction of the person, that if the subject-matter being conceded, is the sole criterion in every collateral attack wherever made; and if that is wanting *in toto,* the judgment is totally void, or if it is wanting in part only, the judgment is partially void; and whether the one or the other, the effect must be the same in every State.

Paper Co. *v.* Shyer.

The distinction made by some of the State Courts in that class of cases last referred to, namely, that a judgment against a nonresident in Court by constructive or substitutional service may be valid in the State of its rendition, though invalid in other States, has also received some recognition, if not direct approval, in several cases coming before the Supreme Court of the United States. Notable among these is *Lafayette Ins. Co.* v. *French,* 18 How., 404, wherein the Court made the observation that, "Whenever an action is brought in one State on a judgment recovered in another, *it is not enough to show it to be, valid in the State where it was rendered;* it must also appear that the defendant was either personally within the jurisdiction of the State,. or had legal notice of the suit, and was in some way subject to its laws so as to be bound to appear and contest the suit, or suffer a judgment by default."

The same Court criticized the proposition reprehensively and rejected it in *Pennoyer* v. *Neff,* saying: "In several of the cases the decision has been accompanied with the observation that a personal judgment thus recovered has no binding force without the State in which it is rendered, implying that in such State it may be valid and binding. But if the Court has no jurisdiction over the person of the defendant by reason of his nonresidence, and, consequently, no authority to pass upon his personal rights and obligation;

if the whole proceeding, without service upon him or his appearance, is *coram non judice* and void; if to hold a defendant bound by such a judgment is contrary to the first principles of justice, it is difficult to see how the judgment can legitimately have any force within the State. The language used can be justified only on the ground that there was no mode of directly reviewing such judgment or impeaching its validity within the State where rendered; and that, therefore, it could be called in question only when its enforcement was elsewhere attempted. In later cases this language is repeated with less frequency than formerly, it beginning to be considered, as it always ought to have been, that a judgment which can be treated in any State of this Union as contrary to the first principles of justice, and as an absolute nullity, because rendered without any jurisdiction of the tribunal over the party, is not entitled to any respect in the State where rendered." 95 U. S., 732. And again: "Since the adoption of the Fourteenth Amendment to the Federal Constitution, the validity of such judgments may be directly questioned, *and their enforcement in the State resisted.* on the ground that proceedings in a Court of Justice to determine the personal rights and obligations of parties over whom the Court has no jurisdiction, do not constitute due process of law." Ib., 733.

Since the deliverance of the last cited opinion, some of the States that had previously announced the distinction there reprehended and repudiated, have had occasion to reconsider the question, and upon the authority of that case they have overruled their former decisions to the contrary, and adopted a rule in harmony with it. *Laughlin* v. *Ice Co.,* 35 La. Am., 1184; *Lydiard* v. *Chute,* 45 Minn., 277; *Eastman* v. *Dearborn,* 63 N. H., 364; *National Bank* v. *Peabody,* 55 Vt., 492.

Still, notwithstanding the great force and emphasis of the opinion in *Pennoyer* v. *Neff,* the same learned and distinguished Court, in later cases, has used language at least tending to give encouragement to the contrary view on this point. For instance: "The Courts of States might, perhaps, feel bound to give effect to the service made as directed by its statutes, but no Court, deriving its authority from another government, will recognize a merely constructive service as bringing the person within the jurisdiction of the Court." *Hart* v. *Sanson,* 110 U. S., 156. Again, in the case of an action in Maryland on a judgment rendered in Pennsylvania, it was said: ". . . And the distinction between the validity of a judgment rendered in one State, under its local laws upon the subject, and its validity in another State, is recognized by the highest tribunals of each of the States. . . . And even if judgment could have been entered against

him, not being served and not appearing, in each of the States of the Union, in accordance with the laws therein existing upon the subject, he could not be held liable upon such judgment in any other State than that in which' it was so rendered, contrary to the laws and policy of such State." *G. & B. Sewing Machine, Co.* v. *Radcliffe,* 137 U. S., 287, 299.

And still again: "Whatever effect a constructive service may be allowed in the Courts of the same government, it cannot be recognized as valid by the Courts of any other government." *Goldey* v. *Morning News,* 156 U. S., 518.

However, the implication arising from these incidental expressions, cannot properly be regarded as having superseded or overruled the distinct announcement to the contrary in the case of *Pennoyer* v. *Neff.*

The inevitable conclusion from all that has been said herein is, that § 5298 of Shannon's Code is repugnant to the *due process* clause of the Fourteenth Amendment to the Federal Constitution, and, therefore, void, in so far as it may have been intended to authorize an execution against a non-served, non-appearing nonresident for any amount after the appropriation of his impounded property. The property of a nonresident situated in this State may, upon substitutional service by publication only, be impounded and appropriated on his debt, and to that end

the Court must first determine the fact of his indebtedness, but it has no jurisdiction in such case to render a personal judgment and award an execution for the residue.

The demurrer is overruled and the cause remanded.

Judges Beard and McAlister concur; Judges Snodgrass and Wilkes dissent.