MARY C. TIPTON *v.* C. E. TIPTON *et ux.*

'(*Jackson.* April Term, 1907.)

1. **WRIT OF ERROR.** Application for, made without notice within a year.

   Application for writ of error and *scire facias* to revive the cause against the heirs of a party dying after the final decree and the close of the term, made within one year to the clerk of the supreme court, may be acted upon and granted without notice to the adverse party; for the notice required in such case applies only to the hearing, to be given after such application and five days before the hearing. (*Post, pp.* 695-697.)

   Code cited and construed: Secs. 4919, 6350 (S.); secs. 3903, 5267 (M. & V.); secs. 3183, 4515 (T. & S. and 1858).

   Cases cited and approved: Spurgin v. Spurgin, 3 Head, **24;** White v. Bettis, 5 Heisk., 376.

2. **SAME.** Same. Rule 27 of supreme court as to notice does not apply within one year, unless supersedeas is sought, when.

   Rule 27 of the supreme court (found in 5 Pickle, 777) requiring notice of petition for writs of error or writs of error and *supersedeas* has no application where the writ is applied for within one year, unless a *supersedeas* is applied for in connection with the writ of error. (*Post, p.* 697.)

3. **SAME.** Notice of application for, is waived by demurrer or motion to dismiss, when.

   Notice of the application for a writ of error and *scire facias* to revive a cause against the heirs of a deceased party is waived by appearance and demurrer to the *scire facias*, or by motion to dismiss the writ of error for want of notice. (*Post, pp.* 697, 698.)

   Cases cited and approved: Spurgin v. Spurgin, 3 Head, 25; McBee v. McBee, 1 Heisk., 560.

Tipton v. Tipton.

4. **SAME.** After death of adverse party, with scire facias to revive.

The defendant is entitled to a writ of error and *scire facias* to revive the cause against the heirs of the deceased complainant who died after final decree in his favor and after the adjournment of the court. (*Post, pp.* 698-701.)

Code cited and construed: Secs. 4569, 4575 (S.); secs. 3560, 3566 (M. & V.); secs. 2846, 2854 (T. & S. and 1858).

Cases cited and approved: Huff v. Miller, 2 Swan, 85; Spurgin v. Spurgin, 3 Head, 24; Fitzsimmons v. Johnson, 90 Tenn., 426.

5. **SCIRE FACIAS.** To revive against heirs of a deceased party need not be in the nature of a declaration.

A *scire facias* to revive a cause against the heirs of a deceased party need not be in the nature of a declaration informing the parties of the nature of the liability sought to be established against them, but it is sufficient if the requisites prescribed by statute are stated. (*Post, pp.* 701, 702.)

Code cited and construed: Sec. 6240 (S.); sec. 5173 (M. & V.); sec. 4428 (T. & S. and 1858).

6. **CHANCERY PRACTICE.** Pro confesso and final decree on the second day of the term, when court is about to adjourn.

A *pro confesso* may be entered on the second day of the appearance term and a decree may be pronounced thereon, where the business of the court has been finished, and the court is about to adjourn, and such conditions are made to appear affirmatively by the decree. (*Post, pp.* 702-705.)

Code cited and construed: Sec. 6160 (S.); sec. 5093 (M. & V.); sec. 4350 (T. & S. and 1858).

Acts cited and construed: Acts 1871, ch. 97, sec. 1, rule 11, sec. 1; Acts 1905, ch. 472.

Tipton v. Tipton.

7. **SAME.** Final decree upon pro confesso, and bill setting aside complainant's deed to defendant is warranted, when.

A final decree, upon a *pro confesso* and, the bill, in favor of the complainant, may be rested upon the ground, (1) that the conveyance was procured by undue influence; and, (2) for failure and want of consideration and for fraud, where the bill to set aside complainant's conveyance of her land to defendant alleges that complainant was eighty-four years old and feeble; that defendant was her grandson, reared in her family, and occupying a confidential relation; that he represented to her that it would be better for her for him to live with her, and induced her by his acts of kindness and representations to convey her land to him, in consideration that he should come and live with her and furnish her companionship and maintenance; that he soon failed to furnish her companionship and permitted his family to be rude to her; and that he shortly afterwards moved away, making no provision for her, and sought to sell the land. (*Post, pp.* 705-708.)

---

FROM TIPTON.

---

Writ of error to the Chancery Court of Tipton County.—JOHN S. COOPER, Chancellor.

CHAS. B. SIMONTON & SON, J. C. BOALS, N. W. BAPTIST, and W. A. OWEN, for complainant.

MINOR, METCALF & MINOR and G. ALLISON HOLLAND, for defendants.

MR. JUSTICE M'CALISTER delivered the opinion of the Court.

This cause is before this court on motion of complainant to dismiss the application for writs of error and *scire facias*. It appears from the petition that at the June term, 1906, of the chancery court of Tipton county, a decree was pronounced setting aside the conveyance of certain real estate made by the complainant, Mary C. Tipton, to her grandson, the said Chas. E. Tipton.

The title was divested out of the said C. E. Tipton and vested in the complainant, Mary C. Tipton. In August, 1906, Mary C. Tipton died, leaving as her heirs at law Mrs. Alice Green, Mrs. Lou Buttorf, and Mrs. Sallie Mitchell, the last of whom is alleged to be a nonresident of the State of Tennessee, and a resident of the State of Texas. The decree pronounced at the June term, 1906, of the chancery court of Tipton county was unappealed from, and complainant died since the close of said term.

On December 31, 1906, C. E. Tipton filed with the clerk of this court a petition, accompanying with it the transcript of the record of the cause of Mary C. Tipton against C. E. Tipton in the chancery court of Tipton county, praying for writs of error and *scire facias* to issue against Mrs. Sallie Mitchell and the other heirs at law of Mary C. Tipton to revive the cause against them. The writ of *scire facias* issued and was served upon Mr. and Mrs. Green personally, and by publication on the remaining three heirs. A certified copy of the record was duly filed in the clerk's office.

Mr. and Mrs. Green appeared and filed a demurrer to the *sci. fa.* Subsequently Mrs. Mitchell filed her motion to deny the application for writs of error in this cause, upon the grounds:

"First. No notice of the filing of the record and of the application for writs of error in this cause was given, as required by the statute and the rules of this court.

"Second. Because this cause is not properly in this court, and this court is without jurisdiction to grant any relief in the premises.

"Third. Because there is no provision of the statute, or of the common law, or of any rule of this court, authorizing the petition and record in this cause to be filed, or for the issuance of writs of error herein, because the decree complained of was rendered at the June term, 1906, of the chancery court of Tipton county, Tennessee, and said decree was unappealed from, and said term of the chancery court is long since ended, and the only complainant in said cause has since the expiration of that term died, and there is no suit pending, and no person in being upon whom notice of the application for the writs of error can be served.

"Fourth. Because the relief sought in this cause and the filing of said petition and record is in effect an original suit, and this is a court of appellate jurisdiction only."

It appears that Lou Buttorf, another one of said heirs, joins in the foregoing motion as if she had separately filed the same.

It will be observed that the questions now before this court arise, first, on the motion submitted on behalf of Mrs. Mitchell and Mrs. Lou Buttorf to dismiss the writ of error for the reasons already stated; second, on the demurrer filed on behalf of Mr. and Mrs. Green to the writ of *scire facias.* It will be observed that the first ground of the motion to dismiss is that no notice of the filing of the record and of the application for writs of error was given, as required by statute and the rules of the court. The statute requiring notice provides that if the writ of error "is sued out after the term of the court at which the judgment complained of was rendered five days' notice in writing shall be given to the adverse party of the intention to apply for the writ." Shannon's Code, section 4919.

It is provided by another section of the Code that the writ of error may be prosecuted from any final judgment or decree during the term of the supreme court; the record being filed in the court and the opposite party or his counsel notified five days before the hearing. Shannon's Code, section 6350.

Section 4919 of Shannon's Code, supra, has several times been before the court for construction. In *Spurgin* v. *Spurgin,* 3 Head, 24, it was said:

"A motion has been entered by the defendant in error to dismiss the writ of error, on the ground of the plaintiff's noncompliance with the provision of the section 3183 (Shannon's Code, 4919), requiring that 'five days'

notice in writing shall be given to the adverse party of the intention to apply for the writ.'

"The argument in support of the motion assumes that this notice is a necessary preliminary step, precedent to the application for a writ of error, in all cases, and, con-sequently, that the writ cannot be regularly issued until after the expiration of five days from service of such notice. In our judgment this is not the proper construction of the law. However plausible it may seem upon a literal reading of the section, it would lead to consequences so incongruous and absurd that it is not to be supposed that such was the intention of the legislature. . . . The point to be determined is whether the notice must necessarily precede the application for the writ of error, or may not be given after it has been applied for and obtained. We are led to the conclusion that the latter is the correct construction, in view of the obvious reason and object of this requirement of the statute, which, in general, must control the literal import of words." *White & Co.* v. *Bettis & Caps,* 5 *Heisk.,* 376.

In respect of rule 27 of this court, it suffices to say that it has no application where the writ is applied for within one year, unless a *supersedeas* is applied for in connection with the writ of error.

We are of opinion that the parties have all had sufficient notice of the application for the writ of error. In fact, Mr. and Mrs. Green waived notice by appearing and filing a demurrer to the *scire facias.* The other heirs were served by publication. It is also true that Mrs.

Mitchell and Mrs. Buttorf, who joined in the motion to dismiss the writ of error, thereby acknowledged and waived service of notice. This question of waiver arose in *McBee* v. *McBee*, 1 Heisk., 560, wherein the court said:

"It is now moved to dismiss the writ of error on two grounds: First, because the five days' notice for the application for writ of error was not given. The answer to the first reason is that the complainant has waived the necessity for notice by appearing, thus answering the object of the notice." Again in *Spurgin* v. *Spurgin*, 3 Head, 25, it was said:

"The object [of the statute as to notice] could not have been to entitle the adverse party to appear and resist the issuance of the writ. The prosecution of a simple writ of error is as much a matter of right as is the prosecution of an appeal. Under our system, the right to pursue either remedy, at the party's own peril, cannot be questioned or gainsaid. There would have been no sense, therefore, in providing that the adverse party should have an opportunity of appearing before the clerk when the writ was applied for; the latter having no discretion to judge of the propriety of the application, or to refuse it. And this may, perhaps, be said also in respect to an application for a writ of error merely, made to a single judge of the supreme court."

The remaining grounds assigned for the dismissal of the writ of error proceed upon the idea that since the complainant below, Mary C. Tipton, died after the ren-

dition of said decree and after the adjournment of the court, there can be no prosecution of a writ of error, for the reason there is no one upon whom notice can be served. While the precise question here presented has not been decided in any reported decision of this court, so far as we are advised, a case analogous in principle is that of *Huff* v. *Miller*, 2 Swan, 85. In that case it appeared that Miller and others obtained a decree against Huff and Walden for $580.90 on the 13th day of May, 1852. Before the expiration of twelve months from the rendition of the decree, a transcript of the record was filed in this court. After the final decree, but before the filing of the record with the clerk of this court, Walden, one of the defendants, died, and his administrator seeks to join with Huff, the surviving defendant, in the prosecution of this writ of error, without having taken any other step except to join in the filing of the record and the execution of the bond for the prosecution of the writ of error. Said the court:

"We know of no settled practice in this court in a case like the present; and in establishing a rule of future practice it seems to us proper, and indispensable, that the death of Walden should be first suggested to the court, and proved, and that thereupon a *scire facias* should be awarded, at the instance of the administrator, uniting the twofold office of a *scire facias* to revive the decree against the administrator and a *scire facias ad audiendum errores*. And this course the administrator may pursue in the present case. Should he de-

cline to do so, there can be no doubt of the right of Huff, upon the suggestion of Walden's death since the decree was rendered, to prosecute the writ of error alone."

This case in principle, we think, decides the case at bar, and establishes the practice insisted upon by the petitioner herein. The argument against the right of the petitioner to a writ of error and to a *scire facias* to revive the case against the heirs of the complainant proceeds upon the idea that the writ of error is a new suit and that this court has no original jurisdiction. It may be conceded that for some purposes the writ of error is a new suit, but ordinarily it is the continuation of a suit already begun, as said by this court in *Fitzsimmons* v. *Johnson,* 90 Tenn., 426, 17 S. W., 102:

"In the very nature of the case a writ of error cannot be the original action. A writ of error lies in behalf of the party or privy to the original suit already finally determined in the lower court, and it must run against another party or privy to such original suit. A writ of error has no place in the law, unless there has been an original action, and, where given scope, it is but a suit on the record in the original case.

"The supreme court of the United States has several times said that a writ of error is rather a continuation of a certain litigation than the commencement of an original action, and we think that such it is, most manifestly. *Cohens* v. *Virginia,* 6 Wheat. (U. S.), 410, 5 L. Ed., 257, and other authorities.

"A writ of error is like a new suit, in that it can be

prosecuted only upon notice to the opposite party. But that notice need not be personal, as in the commencement of an original action. It may be either personal or constructive as the state, creating the tribunal may provide. *Pennoyer* v. *Neff*, 95 U. S., 734, 24 L. Ed., 565."

As already seen in *Spurgin* v. *Spurgin,* the writ of error is a matter of right, and, of course, cannot be lost to one party litigant by the death of the adverse party. It is provided by the Code "that no civil action  .  .  . except actions for wrongs affecting the character of the plaintiff shall abate by the death of either party, but may be revived." Shannon's Code, section 4569.

Again by another section of the Code:

"No appeal or writ of error in any cause or court shall abate by the death of either complainant or defendant, but may be revived by or against the heir, personal representative, or assign." Shannon's Code, section 4575.

We shall next notice the demurrer to the *scire facias.* It is said that a *scire facias* can only issue in a pending suit and to revive a judgment, and when the chancery court of Tipton county rendered the decree herein and adjourned, and the only complainant in the original bill died, the cause was finally ended. It is said there is now no pending case or suit and no provision for appeal or writ of error, and no authority for the issuance of a *scire facias* against the heirs at law of Mrs. Mary C. Tipton. Several of the objections herein urged are answered by what has already been said in respect of the motion to dismiss the application for the writ of er-

ror, but it is said in addition that a *scire facias* is both a declaration and a summons, and that as a declaration it should inform the person sought to be made a party to the suit of the nature of the liability sought to be established against him by the suit, and for this reason the writ of *scire facias* in this cause is wholly defective. Shannon's Code, section 6240.

We are of opinion that sufficient facts are set out in the *scire facias* to warrant its issuance, and there is no merit in the demurrer, which is overruled.

Turning, now, to the merits of the case, the main assignment is that the chancellor was in error in permitting a *pro confesso* to be taken on the second day of the trial term. The original bill was filed in the chancery court of Tipton county by Mary C. Tipton against C. E. Tipton on the 7th of May, 1906, and was returnable to the first Monday in June, 1906. The subpoena was actually issued May 7, 1906, and *pro confesso* taken on the day after the first Monday in June. A decree was rendered reciting that, whereas, C. E. Tipton had failed to appear and make defense, the bill should be taken as confessed and set for hearing *ex parte,* and thereupon the decree proceeded to recite that the cause came on to be heard June 5, 1906, upon the bill, and the *pro confesso* against C. E. Tipton, when it appeared to the court "that prior to April 12, 1905, complainant owned the land in question, and that on that day the defendant C. E. Tipton procured the complainant to convey said land to him by her, and without any consideration other

than the promise and agreement upon his part to furnish to complainant companionship, care, maintenance, and support during her life. That defendant failed and refused to so care for and support and maintain complainant, and never intended to do so, but wrongfully and fraudulently procured the conveyance to be made to him, said defendant, that he might sell and dispose of same, and the same is so ordered, adjudged, and decreed."

The decree then adjudged that the conveyance to the defendant C. E. Tipton was void and that the title thereto belonged to complainant, and thereupon ordered, adjudged, and decreed that all title be divested out of defendant and revested in the complainant.

Now the assignment of error on the merits is that the court erred in rendering a decree *pro confesso* against the defendant, C. E. Tipton on June 5, 1906, said day being the first Tuesday after the first Monday of June, 1906, and being the second day of the June term of the court, for that the time for answer by the said defendant had not expired.

The decree was probably taken in pursuance of section 6160 of Shannon's Code as follows:

"Service of the original subpœna on the defendant five days before the return day shall bind him to appear within the first three days of the term if the court holds so long, otherwise on the first day of the term."

The decree in this case recites that the "business of the court had been disposed of and is about to adjourn for

the term." It is argued that this section of the Code is repealed by chapter 97, p. 94, Acts 1871. Section 1 of that act provides as follows:

"That the rules of practice of the chancery court of this State shall be as follows, and all other rules of practice of said court heretofore in force, and all sections of an act entitled the 'Code of Tennessee,' inconsistent with the same, or so far as the two are inconsistent, be and the same are hereby repealed, and the rules submitted to this general assembly by the chancellors of the State be adopted as herein set out by rules, heads, and sections, as follows."

Rule 11, section 1, provides:

"Whenever the terms of a court shall continue for a sufficient time, all process which shall have been issued for more than five days before the first day of the term, may be made returnable to any Monday of the term, and if the same shall be executed five days before such return day, the defendant shall cause his appearance to be entered and make defense or obtain time therefor within three succeeding days, and the cause shall stand to be proceeded in at that term."

In our opinion section 6160, Shannon's Code, is not repealed by the act of 1871, since there is no inconsistency between the two acts.

We think the difficulty is set at rest by chapter 472, p. 1007, Acts 1905, amendatory of section 4350 of the Code of 1858 and Shannon's Code, section 6160, as follows:

"Service of the original subpoena on the defendant five days before the return day shall bind him to appear within the first three days of the term, if the court hold so long; otherwise, on the first day of the term; provided however, if the term of court be for more than three days, and the business of the court has been finished within three days, and the court is about to adjourn, *pro confesso* may be taken in any case in which defense has not been made."

It affirmatively appears that both conditions of the act of 1905 are present in the decree herein complained of. First, the term of the court could have been held for more than three days; but the business was finished within three days, and under that act, the court being about to adjourn, the *pro confesso* was proper.

The third assignment is that the court erred in rendering the decree by which the conveyance by said Mary C. Tipton was annulled and declared void for fraud, for that the fraud alleged in the bill and recited in the bill was predicated on the alleged false promise by the said defendant C. E. Tipton, and frauds cannot be based upon representations relating to the future.

The fourth assignment is that the court erred in rendering the decree by which the said conveyance to C. E. Tipton was canceled for that the bill did not allege, nor did the decree find any grounds sufficient at law to warrant a rescission or cancellation of the said conveyance.

The fifth assignment is that the bill, taken as a whole, did not warrant or justify a decree declaring void the conveyance by the complainant to the defendant.

Considering these three assignments together, we are of opinion that a decree *pro confesso* and final decree might be properly rested upon the allegations of the bill. The bill charges that complainant is eighty-four years of age, in feeble health, and dependent upon hired help for companionship, care, and nursing; that the lot of land described in the bill was her own, and the only real estate she possessed; that the defendant C. E. Tipton was a grandson, and occupied a very intimate and confidential relation of trust; that he resided in Tipton county, and had a family, consisting of a wife and two children almost grown; that he had been reared from infancy in complainant's family; that after her husband's death he occupied the position of son and protector to her, and she had ubounded confidence in him; that he represented to her it would be better for him to live with her, and he induced her by his acts of kindness and representations to convey to him her home, and that the consideration of said conveyance was that he should come and live with her, furnish her companionship, the comfort of his society, nurse and maintain her during her declining days, but that, having unbounded confidence in him, she permitted him to prepare the deed, and never examined it, and signed it without examination as to the consideration, and it recites improperly the consideration of $1, love, and affection, and other

considerations; that upon the delivery of the deed he
came to reside with her with his family, but soon failed
to afford her companionship, and avoided her, and per-
mitted his family to be very rude to her; that he left
her when she was very ill and unconscious, without noti-
fying her neighbors, almost exclusively to the care of
an ignorant negro cook; that his family returned to
Lexington, Kentucky, to make it their home; that he
finally abandoned her home, telling her he was going
to Kentucky to engage in business, and made no pro-
vision for her care and maintenance, or comfort, or
support; that he not only abandoned her, but he had
sought and was still seeking to sell the lot of land, her
old home, and deprive her of her place of abode. Com-
plainant charges that the defendant is, in disregard of
his obligations to complainant and of the solemn con-
siderations of said deed of conveyance, about to sell and
convey the said lot of land, and will do so unless re-
strained by this court. The value of the house and lot
is stated to be four thousand dollars. The bill charges
that defendant paid no consideration, or anything of
value, for the property, the consideration being that
he would furnish companionship, care, attention, main-
tenance, and support, all of which he declined to give
to complainant, and that he never intended to when he
procured the conveyance to be made.

We are of opinion that the decree of the chancellor
might be well rested upon the allegations of the bill, first,
that the conveyance was procured by undue influence;

and, second, for failure and want of consideration and upon the ground of fraud.

The decree of the chancellor will be affirmed, with costs.